**Black Srebnick**
CIVIL | CRIMINAL

HOWARD SREBNICK, *Partner*
Office: 305.371.6421
HSrebnick@RoyBlack.com

January 8, 2025

VIA ECF

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square New York, New York 10007

>    Re:   *United States v. Alon Alexander*, Docket No. 24-CR-00676 (VEC)

Dear Judge Caproni:

We represent defendant Alon Alexander in the above matter. Alon respectfully submits this letter requesting revocation of the detention order entered by the Honorable United States Magistrate Judge Eduardo Sanchez in the Southern District of Florida on January 3, 2025. *See* 24-MJ-04616-EFD (S.D. Fla.), ECF No. 18, attached hereto as **Exhibit 1** (the "Detention Order").

While Magistrate Judge Sanchez found that there are bail conditions which could mitigate the concern of any potential danger to the community and reasonably assure the safety of the community, he found that there are no conditions that would reasonably ensure Alon's return to court. *Id*. at 3. But the proposed bail package more than ensures that Alon will abide by any conditions set by this Court and appear to face the charges leveled against him, and therefore bond should be granted. The government opposes the relief requested in this motion.

Alon, a Miami-born, United States citizen, has known of the criminal investigation leading to this indictment as early as July 2024 and made no attempt or plans to flee since then. Alon proposes an expansive bail package, including, among other conditions, a bond *in any amount* secured by multiple properties owned by himself and family members—indeed the entirety of his and his parents' assets; and home confinement with electronic

Letter to Judge Caproni
January 8, 2025
Page 2
_____

monitoring by the U.S. Probation Department, as well as around-the-clock private armed security (as described in greater detail below) and any other condition suggested by this Court to mitigate any perceived risk of flight or potential danger to the community.

### A. Procedural History

Since the summer of 2024, the media has reported that the FBI had initiated a criminal investigation of the Alexander brothers, fueled by publicly-filed lawsuits brought by civil plaintiffs seeking monetary damages for alleged sexual assaults occurring more than five years ago—none of which were reported to law enforcement in real time.

On December 11, 2024, the government unsealed an indictment in this Court charging Alon with one count of Conspiracy to Commit Sex Trafficking, in violation of 18 U.S.C. § 1594(c), and one count of Sex Trafficking, in violation of 18 U.S.C. § 1591. *See* 24-CR-00676, ECF No. 3. Alon was arrested in the early morning of December 11, 2024, at his home in Miami Beach. Alon made his initial appearance in the Southern District of Florida on December 20, 2024. *See* 24-MJ-04616-EFD (S.D. Fla.), ECF No. 4. The government moved for pretrial detention.

On December 30, 2024, a detention hearing was held before Magistrate Judge Sanchez. A copy of the December 30, 2024 hearing transcript is attached as **Exhibit 2**. At the hearing, the government called FBI Special Agent Audra Hampsch. Alon's mother, Orly; his wife, Shani; his family friend and ex-girlfriend, Danielle Epstein; his uncle, Gil Neuman; and V2 Global Leader Don Deluca all testified on Alon's behalf.

At the conclusion of evidence and argument, Magistrate Judge Sanchez continued the detention hearing until Friday, January 3, 2024, to allow the defense to present additional information regarding the home confinement option proposed during the hearing. *See* 24-MJ-04616-EFD (S.D. Fla.), ECF No. 15. Alon submitted a response to the government's supplemental memorandum in support of detention, providing a detailed review of private security company V2 Global's plan to monitor Alon's compliance with the conditions of home confinement. *Id*. at ECF 17.

Letter to Judge Caproni
January 8, 2025
Page 3
_____

At the January 3, 2024 continuation of the detention hearing, Alon offered the following bail package: (i) a multi-million dollar bond *in any amount,* secured by all of his assets, and those of his parents Schlomo and Orly Alexander, and his brothers Oren and Tal Alexander (who are codefendants in this matter); (ii) surrender of his U.S. passport, and the passports of his wife, children and parents; (iii) home confinement with GPS monitoring at an eighth floor condominium in Miami; and (iv) around-the-clock monitoring by private security company V2 Global pursuant to a security plan (provided to the government) regarding the procedures and protocol that can be implemented, addressing contact with law enforcement authorities, staffing, technology, the monitoring post, and movements. *See* January 3, 2025 hearing transcript, at 3-13, attached hereto as **Exhibit 3**; *see also* ECF 17. Alon presented to the court a letter from his neighbors in support of his good character, a schedule of the Alexander family's financial assets (under seal), and a PowerPoint presentation (under seal) highlighting the unreliability of certain accusers whose identities are known.[1]

At the conclusion of the hearing, Magistrate Judge Sanchez found that Alon had presented evidence sufficient to rebut the presumption of detention, and the conditions offered alleviated any potential risk of danger to the community, but no conditions could reasonably assure Alon's appearance as required. Exhibit 3, 21-25; *see* Detention Order. Defense counsel requested that Alon's removal to the Southern District of New York be stayed until the close of business on January 7, 2024, after Oren Alexander's detention hearing, which Magistrate Judge Sanchez granted *ore tenus*. 24-MJ-04616-EFD (S.D. Fla.), ECF No. 22, 23.

On January 5, 2025, the government submitted a letter updating the Court on the status of proceedings in the Southern District Florida and to jointly request, along with defendants, that the Court vacate the currently scheduled bail appeal hearing for Tal

---

[1] Alon will submit these documents to this Court under seal in conjunction with the filing of this Letter.

Letter to Judge Caproni
January 8, 2025
Page 4

_____

Alexander and instead schedule a consolidated hearing to decide the bail appeals/bail applications of all three defendants. *See* 24-CR-00676, ECF No. 16. That consolidated hearing is currently set for January 15, 2025.

### B. Proposed Bail Conditions

Alon proposes the following bail conditions and will be amenable to any modifications to this proposal imposed by the Court. This package includes the following conditions presented at the December 30, 2024 detention hearing, and additional measures proffered at the continuation of the detention hearing on January 3, 2025 (*See* 24-MJ-04616-EFD (S.D. Fla.), ECF No. 8, 17), which Magistrate Judge Sanchez rejected:

a. A bond in any dollar amount, co-signed by Alon's parents, Shlomo and Orly Alexander, and secured by the entirety of the family's wealth, as demonstrated to the magistrate judge in the schedule of the family's assets, submitted under seal;
b. Surrender of Alon's U.S. passport, which is the only passport he has;
c. Surrender of Alon's parents' U.S. and Israeli passports;
d. Surrender of Shani Alexander's passport (Israel, the only one she has);
e. Surrender of Alon's children's passports (U.S., the only ones they have);
f. Execution of waivers of extradition;
g. Home confinement with GPS monitoring at any location approved by the Court;
h. Armed security guards stationed at the location of home confinement at all times (24 hours per day, every day) to ensure compliance with the conditions imposed by the Court:
    i. Private security personnel will be present at the location of home confinement 24 hours per day, every day;
    ii. Private security will install video cameras and door and window sensors and alarms, which they will monitor;
    iii. Private security may wiretap and monitor Alon's phone and computer activity and report to the Court any violations of his bail conditions;
    iv. Alon consents to members' of private security team use of force as they deem appropriate to prevent him from fleeing;
    v. Private security personnel will accompany Alon for any necessary travel away from home confinement (e.g., to and from court); and
    vi. Alon will bear the cost for all private security services.
i. Restricted access to home to visitors approved by Pretrial Services;
j. Authorization for the government to search the location of home confinement at any time to ensure his compliance with his bail conditions.

4

This stringent combination of conditions should wholly alleviate concerns with respect to the risk of flight. These conditions also reasonably ensure the safety of the community, as Magistrate Judge Sanchez found in the Detention Order.

### C. Argument

A district court "conducts a *de novo* review of a magistrate judge's decision to release or detain a defendant pending trial." *United States v. Esposito*, 309 F. Supp. 3d 24, 30 (S.D.N.Y.), *aff'd*, 749 F. App'x 20 (2d Cir. 2018) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). When deciding whether to detain a defendant before trial, the Second Circuit has explained that "the court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Indeed, the Bail Reform Act requires that the Court impose "the least restrictive . . . condition, or combination of conditions, that will . . . reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(c)(1)(B).

Although there is a presumption of detention in all sex trafficking cases, this presumption is rebuttable. Magistrate Judge Sanchez specifically found that Alon presented evidence sufficient to rebut the presumption of detention. *See* Detention Order, at 2. Initially, the presumption requires the defendant to meet a "burden of production," while the "burden of persuasion" remains with the Government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). A defendant satisfies his burden by offering "evidence that he does not pose a danger to the community or a risk of flight." *Id*. If this burden is met, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*.

#### 1. The Proposed Bail Package Eliminates The Risk of Flight

Magistrate Judge Sanchez ruled that the bail conditions proposed by Alon could not reasonably ensure that he would appear in Court, improperly relying on the Alexanders' "international contacts" in Israel and their family's wealth as a basis for detention. This

Letter to Judge Caproni
January 8, 2025
Page 6
_____

Court should find that the extreme bail conditions set forth in Section B in this letter alleviate the stated flight concerns.

    a. *Alon did not flee after learning of the criminal investigation.*

As a threshold matter, the Court should note that Alon Alexander has known of the criminal investigation that led to this indictment since July 8, 2024, when it was reported in the Wall Street Journal.[2] Since that date, Alon made no attempt or plans to flee—in fact, even though he traveled internationally while the investigation was pending, he always returned home to his family in Miami.

    b. *Alon has strong ties to the United States.*

Alon is a United States citizen, born and raised in Miami, Florida. He attended high school in Miami, and then obtained his college degree from the University of Maryland and his law degree from the New York Law School. He was admitted to the New York Bar in 2016—meaning he satisfied standards for professionalism, ethics, integrity, and character imposed by the State Board of Bar Examiners. For more than a decade, Alon has worked for the family business as Vice President of Kent Security, headquartered in South Florida.

Alon met his wife Shani in 2018, they became engaged in 2019 and married in 2020. Shani served honorably in the Israeli military before moving to the United States where she has become a lawful permanent resident. With Shani, he has two infant daughters. Alon maintains a strong connection with his friends and family; the Alexanders have over 40 family members in the greater Miami area alone. They are active in their neighborhood and community. Alon Alexander is a family man: a United States citizen; his family ties are to the United States; his home is in the United States; his family business is in the United

---

[2] Emily Glazer and Katherine Clarke, "FBI Probing Rape Allegations Against Star Real-Estate Brokers," THE WALL STREET JOURNAL (Jul. 8, 2024), https://www.wsj.com/us-news/fbi-probing-rape-allegations-against-star-real-estate-brokers-482fbab9.

Letter to Judge Caproni
January 8, 2025
Page 7
_____

States, and as noted above, he has repeatedly returned home since learning of the federal investigation. He has engaged in no conduct to support the claim that he is a flight risk.

      c. *The Alexander family's immigrant background and self-made wealth are improper grounds for detention.*

The government has made much of the Alexander family's Israeli heritage in an attempt to sow concern regarding risk of flight. It has continued to assert that Alon should be detained due to his family's "significant foreign ties, particularly to Israel." 24-cr-00676-VEC (S.D.N.Y.), ECF 4. The apparent basis of these "foreign ties" is the fact that Alon's parents emigrated to the United States from Israel nearly 50 years ago, in 1975. Further, the government has taken the position that if the Alexanders were to flee to Israel, the Israelis would not permit them to be extradited back to the United States. At brother Tal's detention hearing, the government told Magistrate Judge Reid, "[W]e have confirmed with OIA that if he flees we can't get him back." *See* 24-MJ-04544-LMR (S.D. Fla.), ECF No. 30 at 67:16-17; and, "The fact that his parents are Israeli, the fact that he has traveled back to Israel, the fact that we have conferred with OIA and they have indicated that if he does flee there, which has happened in the past, that they are not going to be able to extradite him back and that is not a sure thing." *Id.*, at 51:19-24.

Magistrate Judge Sanchez relied on this basis in making his ruling at the January 3, 2025 hearing:

> And, you know, *he is the son of Israeli immigrants. His wife is an Israeli citizen with family there, as well, and I think that puts him in a different position.* While I do recognize there is an extradition treaty with Israeli [sic], I do recognize that just because there is an extradition in place does not make it easy to extradite someone from a foreign country, and that *it would be difficult, potentially, for someone who is the citizen [sic] of Israeli citizens, whose wife is an Israeli citizen, who could potentially even be deemed, as I understand it because of the circumstances, akin to an Israeli citizen or given similar protections*.

Exhibit 3 at 22:25-23:11 (emphasis added). These fears inaccurately and unfairly overstate any potential risk of flight to Israel.

First, Alon's parents were naturalized as U.S. citizens in 1983, before Alon was born. Since emigrating here nearly one half century ago, they started a family business and developed deep-rooted ties to the Southern District of Florida. Both parents attended the University of Miami, repaying every dollar of student loans they obtained to finance their education. For her part, Alon's mother graduated with a bachelor's in computer science while working part-time as a Hebrew teacher to make ends meet.

Alon was born in the United States, not Israel, and he has lived here his entire life. First-generation Americans like Alon (native-born residents with at least one foreign-born parent) comprise 12% of the U.S. population, or about 36 million people.[3] We are aware of no case where a court has held that a defendant, who is a United States citizen since birth, was more likely to flee because of Israeli ancestry.

Second, Israel, one of America's closest allies, has an extradition treaty with the United States, and Alon has proposed to execute a waiver of extradition as part of his bail package. The mistaken belief that the Israelis will not extradite "one of their own" unfortunately plays into "dual loyalty" tropes.[4] It is also inaccurate. *See United States v. Samet*, 11 F. App'x 21, 22 (2d Cir. 2001) (granting defendant's motion for remand to reconsider detention where "district court erroneously assumed that Israel does not extradite Israeli residents"); *United States v. Kresler*, 392 F. App'x 765, 768–69 (11th Cir. 2010) ("[T]he United States Attorney was under the mistaken belief that Israel would not extradite one of its citizens."). Israel will grant extradition where an individual has been charged or convicted of a felony and where—like here—the conduct at issue is a criminal

---

[3] https://www.census.gov/content/dam/Census/library/publications/2016/demo/P23-214.pdf.
[4] https://www.ajc.org/translatehate/dual-loyalty#:~:text=Dual%20loyalty%20is%20a%20bigoted,loyalty%20to%20the%20United%20States.

offense in both the requesting country and Israel. Under the extradition treaty, Israel extradites not only United States citizens, like Alon, but also its own citizens to the United States for certain offenses. For example, in *United States v. Rosenstein*, the United States Attorney's Office for the Southern District of Florida successfully extradited an Israeli citizen from Israel in a drug trafficking prosecution. *See* 04-CR-21002, ECF 18 (S.D. Fla. April 12, 2006). There, the government requested that the defendant be detained, and the court set a $10 million bond. *Id.*; *see also United States v. Shai Cohen*, 16-CR-00114, ECF 9 (E.D. VA.) (documenting the extradition of an Israeli citizen charged with conspiracy to defraud, money laundering and alien smuggling).[5]

Alon is a United States citizen who has substantial family and business ties in the United States and has no history of flight or intentions to flee. He does not hold citizenship in any other country, including Israel, and has not visited Israel in years. Even if the Alexanders were somehow able enter Israel without a passport (during a time of war, no less), there is no basis to suggest that the Israeli government, which so deeply relies on United States foreign aid, especially now in its ongoing war against terrorism, would betray its treaty obligations and good standing with the United States to harbor a U.S. citizen charged with federal sex trafficking.

Nor is the family's hard-earned wealth a basis to find that Alon is a flight risk. In order to counter this argument, Alon has provided a financial disclosure of his family's assets. The disclosure, filed under seal, identified a long list of properties and corporate interests owned by him and his parents, including real estate investments outside the United States. Disturbingly, the Alexanders' transparency was then weaponized against them as

---

[5] A Google search turns up numerous cases where defendants have been extradited from Israel for prosecution in the United States. *See, e.g.,* https://www.washingtonpost.com/local/public-safety/israel-extradites-accused-russian-computer-hacker-to-united-states/2019/11/12/e40f84ca-057b-11ea-8292-c46ee8cb3dce_story.html; https://archives.fbi.gov/archives/miami/press-releases/2013/fbi-announces-the-extradition-of-a-fugitive-from-israel.

the government now claims that these foreign investment properties support a finding of detention, on the fanciful hypothesis that Alon and his brothers would secrete themselves at the properties of which the government is now aware.

The government's arguments can be boiled down to the simplistic but false tautology that because of his Israeli ancestry and his family's wealth, Alon has the financial ability to flee the United States and is therefore a *conceivable* risk of flight, which requires detention. But the Supreme Court has recognized the distinction between an *opportunity* to flee and an *inclination* to flee. *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978) (reversing lower court and granting appellate bond in case of Vietnamese national convicted of espionage who could not be returned if he were to flee to Vietnam; finding that "if these considerations suggest opportunities for flight, they hardly establish any inclination on the part of the applicant to flee," and noting that "other evidence supports the inference that he is not so inclined"); *cf. United States v. Kaplowitz*, No. 14-20323-cr-Altonaga, 2014 WL 2155231, at *3-5 (S.D. Fla. May 22, 2014) (noting that defendants had no prior convictions; ties to partners and extended family members in this community; no strong foreign connections to other countries; no prior aliases; or attempts to avoid arrest or hide assets and finding that "[a]t best, the facts illustrate *'[a] mere theoretical opportunity for flight' by these Defendants, which is an insufficient ground for pretrial detention*") (citation omitted) (emphasis added).

Alon's Israeli heritage does not establish his inclination to flee to Israel, nor anywhere else. And while the family wealth perhaps creates a greater ability to finance flight, it says nothing about an *inclination* to flee. Indeed, the family's wealth—which was built from the ground up in the United States over four decades of hard work and contribution to the local economy—does the opposite: it highlights their ties to the community, supporting "the inference that [Alon] is not so inclined." *See id*. And their assets offer meaningful collateral to secure Alon's appearance at future hearings, as the family would be left destitute if any of the three brothers fails to appear.

To provide further assurances, Alon is prepared to submit to house arrest with GPS and location monitoring policed by a private security company approved by this Court to conduct 24/7 monitoring to assure his compliance with all conditions of pretrial release. The security company will take direction from, enforce the conditions imposed by, and report to the Court only. The security company that is prepared to work this detail employs top former federal agents and New York City police officers, and off-duty law enforcement officers *who maintain arrest power*. The security company will, among other things, install in and around the residence video cameras and door and window sensors and alarms, monitor Alon's phone and computer activity, and ensure that armed security professionals will be present to enforce the conditions of release at the location of home confinement, 24 hours per day, every day. Alon consents to the use of physical force by members of the private security team to enforce the conditions of home confinement.

The Second Circuit has recognized that for defendants whose means raise concerns regarding the risk of flight, the condition of private armed security in conjunction with home confinement is a way to ensure the defendant's return to court. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (holding that court may release a defendant subject to conditions of home confinement in which, among other things, the defendant pays for private armed security guards). Private home security "may be appropriate where the defendant is deemed to be a flight risk primarily because of his wealth." *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019) (emphasis in original); *see also Esposito*, 309 F. Supp. 3d at 32 (ordering private home security for defendant with significant means).

For example, in *United States v. Ng Lap Seng*, 15-CR-706 (S.D.N.Y.), a Magistrate Judge set bail at the defendant's arraignment in the amount of $50 million personal surety bond secured by $20 million cash and property in New York City, with the defendant's presence to be secured by a company. The government's appeal to the District Court and request for detention was denied, but the District Court imposed increased conditions, which were adhered to by the security service provider. *Id.*, ECF No. 53.

As another example, in *United States v. Jeffrey Webb*, 15-CR-252 (RJD) (E.D.N.Y.), the defendant was arrested abroad on charges of racketeering conspiracy, wire fraud, and money laundering and waived extradition to return to the Eastern District of New York. The court set bail under the following conditions: $10 million bond secured by signatures of ten sureties, properties in Pennsylvania, Georgia, Florida, and the Cayman Islands, and a partnership interest in a P.C.; home confinement with electronic monitoring at a family apartment within 20 miles of the courthouse and thereafter at his family residence in Georgia; surrender of passports; private security service to monitor the defendant's physical location, 24 hours per day, 7 days per week, at both the initial location near the courthouse and later in Georgia. *Id*., ECF No. 65.

In *United States v. Ludwigsen*, 99-CR-520 (ERK), ECF Nos. 207, 236, 304 (E.D.N.Y.), the court approved a bail package including private home security for a defendant arrested in the Southern District of Florida on an indictment charging racketeering (murder) conspiracy in the Eastern District of New York in which the defendant was eventually convicted of participating in a home invasion where the victim was shot point blank in the face and killed. Over the government's objection, the court approved the defendant's release setting conditions including a multi-million-dollar personal surety bond, surrender of passport, house arrest, and a private security guard to monitor all entries into and exits from the home. *Id*.

Magistrate Judge Sanchez wrote that he was "wary of bond conditions that would promote a two-tiered system of justice." *See* Detention Order. But as the Court explained in *Boustani,* imposing these conditions here will not implicate these concerns, because in this scenario, the principal reason Alon has been deemed a flight risk is *because of* his wealth. *See* 932 F.3d at 82. Thus, this proposal fits squarely within what the Second Circuit has described as appropriate for private security: "[A] defendant may be released on such a condition only where, but for his wealth, he would not have been detained." *Id*. With all of the other bail conditions Alon has proposed, if not for Alon's wealth, he would not be

Letter to Judge Caproni
January 8, 2025
Page 13

_____

considered a flight risk. Indeed, the government's position on risk of flight rests almost entirely on Alon's means. The condition of private security addresses this concern and does not foster inequality.

## 2. Alon Does Not Pose a Danger to the Community

Under the proposed bail conditions, Alon does not pose a danger to the community. Magistrate Judge Sanchez agreed. *See* Detention Order; Exhibit 3, 22:1-4 ("While clearly there is a presumption, and I do think that there is dangerousness here, I think that conditions could be fashioned, a combination of conditions, to address any type of danger that is presented here."). Alon has never been convicted of a crime. The indictment charges conduct ending in 2021. At the detention hearing in Miami, the agent could not identify even an allegation against Alon after 2016; and the 2016 allegation—which forms the basis for Count 3—does not allege that Alon engaged in any sexual conduct with the alleged Victim 2. Home confinement with GPS monitoring, private armed security, restrictions on communications, and a Pretrial Services approved list of permitted visitors more than ensures that Alon does not pose any danger to the community.

Importantly, there is no credible evidence that Alon intimidated or threatened potential witnesses. In fact, the proof is so lacking on this issue that the government has highlighted instances where Tal and Oren filed a police report alleging harassment by a potential accuser, and on another occasion Tal considered filing a defamation lawsuit after an accuser spread falsehoods. *See Alexander*, No. 24-cr-00676-VEC (S.D.N.Y.), ECF No. 4 at 7. The government accused Alon of "compiling files" on accusers to "discredit" them, Exhibit 2 at 17, as anyone would do if they felt they had been sued or falsely accused. The government has relied heavily on the purported weight of the evidence in this case. But at the detention hearing, Alon showed that the government's case is unsupported by any reliable evidence. The indictment is entirely vague, and boilerplate in its allegations.

The evidence is particularly weak as to Alon. The alleged conduct would fall outside the statute of limitations for the 18 U.S.C. § 1594 conspiracy count charged in Count 1 of

13

Letter to Judge Caproni
January 8, 2025
Page 14

_____

the Indictment. *See* 18 U.S.C. § 3282(a), and *cf.* 18 U.S.C. § 3299 (listing section 1591, but not section 1594, as a statute to which a statute of limitations does not apply). Alon is not named in Count 2. *See* 24-cr-00676-VEC (S.D.N.Y.), ECF 3. In Count 3, *Alon was not accused of sexually assaulting Alleged Victim 2*, the sole substantive count in which Alon is mentioned. At the detention hearing, the federal agent conceded that the after the alleged "rape" occurred, Alleged Victim 2 and her friend Individual 1 partied in the Hamptons with the Alexander brothers for the remainder of the holiday weekend; and Individual 1, who was supposedly told by Victim 2 of the alleged rape, continued to maintain social interaction with the Alexander brothers, as documented in a photograph of her months later in Miami Beach socializing with Oren Alexander, the (falsely accused) alleged rapist. *See* Alon's PowerPoint Presentation, at 8.

      Alon never engaged or participated in a sexual assault. None of the alleged victims testified under oath and there is zero physical evidence corroborating any of the alleged victims' claims. There is ample evidence impeaching the credibility of the plaintiffs who have sued the Alexanders civilly. For example, one of plaintiffs, KW, messaged Oren Alexander that he was "so fkable tonight," one month before the alleged assault.[6] *See* PowerPoint, at 13. One month after the alleged assault, plaintiff KW messaged Oren asking if she could bring her friends from Australia to his birthday party. *Id*. at 14. And in the year after the alleged assault, plaintiff KW sent multiple illicit text messages and images to Oren and Alon. *Id*. at 15-18. Another civil plaintiff, AP, has brought at least two other actions accusing individuals of sexual misconduct, one of which was dismissed as frivolous and brought primarily "to harass or maliciously injure" the defendant. *See* Alon's PowerPoint, at 19; *see also* Dismissal Order*, Cecora v De La Hoya*, 0112787/2011 (N.Y. Cty. Mar. 30, 2012). A third plaintiff, RW, messaged Oren to meet less than two weeks after the alleged

---

[6] The Plaintiff's names are public record pursuant to their publicly filed lawsuits but for confidentiality purposes Alon will use their initials in these proceedings.

Letter to Judge Caproni
January 8, 2025
Page 15
_____

assault occurred. Alon's PowerPoint, at 26. The civil plaintiffs are not credible witnesses, and the Court should not base detention on their accusations.

The criminal claims in this case are similarly unreliable. The claims are based on years-old allegations which were either not reported to police or deemed not chargeable at the time they occurred; text messages that do not correspond with the specific acts, dates, or events alleged in the indictment; and agents' hearsay testimony about accusers' accounts of these years-old events. In fact, at the December 30, 2024 detention hearing, Special Agent Hampsch testified as follows:

- The FBI had never interviewed any accusers prior to 2024 (Exhibit 2, 25);
- Agent Hampsch did not testify before the grand jury in this case (*Id.* at 22);
- Agent Hampsch did not review the testimony that was presented to the grand jury (*Id.* at 22);
- Agent Hampsch did not review the superseding indictment (*Id.* at 26);
- Agent Hampsch had no knowledge of the contents of the police report made by the Alexander brothers regarding wrongful accusations (*Id.* at 24);
- Agent Hampsch did not know if Alleged Victim Number Two had ever contacted law enforcement before talking to the FBI in 2024 (*Id.* at 28-29);
- Agent Hampsch never interviewed Alleged Victim Number Two (*Id.* at 28)
- Agent Hampsch did not investigate contact Alleged Victim Number Two had with the Alexander Brothers after the weekend in the Hamptons when the sexual assault allegedly occurred (*Id.* at 30)
- Agent Hampsch did not know if Alleged Victim Number Two ever admitted to consensual sexual activity with any of the Alexander brothers (*Id.* at 31);
- Agent Hampsch could not identify which Alexander brother was depicted in a photograph taken during the weekend in the Hamptons when the sexual assault allegedly occurred (*Id.* at 37);
- Agent Hampsch could not point to any physical evidence corroborating the allegations in the Superseding Indictment (*Id.* at 40-41);
- Agent Hampsch could not point to any toxicology evidence corroborating Alleged Victim Two's allegations that she had been drugged (*Id.* at 41);

- Agent Hampsch did not know if anyone corroborated Alleged Victim Two's claim that she was assaulted (*Id*. at 43);
- Agent Hampsch could not point to any evidence that the Alexander brothers ever possessed drugs (*Id*. at 42);
- Agent Hampsch could not identify how many accusers claimed that Alon Alexander sexually assaulted them regarding the conspiracy count (*Id*. at 43);
- Agent Hampsch could not identify physical evidence supporting the claims of the other accusers regarding the conspiracy count (*Id*. at 44);
- Agent Hampsch did not know whether anyone who accused Alon of sexual assault testified before the grand jury (*Id*. at 44);
- Agent Hampsch did not know when the most recent sexual assault allegation against Alon Alexander took place (*Id*. at 46); and finally.
- Agent Hampsch did not investigate the accusers in this case to determine if they made false accusations of sexual assault before (*Id*. at 48).

With the statute-of-limitations problems as to Count 1 and the evidentiary problems as to both Counts 1 and 3, the government's case against Alon is demonstrably weak.

### 3. The Conditions of Metropolitan Detention Center Favor Releasing Alon

This Court may also consider, as other courts in this district have, that the conditions at Metropolitan Detention Center in Brooklyn ("MDC") are not fit for pre-trial detention. In *United States v. Chavez*, 710 F. Supp. 3d 227, 228 (S.D.N.Y. 2024), the court described the conditions at MDC as "dreadful" and "longstanding" and observed that issues with food contamination, "near-perpetual lockdowns," and hazardous physical conditions were an "ongoing tragedy." At least four inmates have died by suicide at MDC in the last four years. *Id*. "It has gotten to the point that it is routine for judges in both this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC. Prosecutors no longer even put up a fight, let alone dispute that the state of affairs is unacceptable." *Id*. at 229; *see also United States v. Morgan*, 19-CR-209 (RMB) (S.D.N.Y. May 5, 2020), ECF 90, Tr. 12-15 (describing the MDC as "dirty," "infested with drugs," and plagued by violence); *United States v. Boyd*, No. 21-CR-486 (SHS), 2022 WL 790771, at *2 (S.D.N.Y. Feb. 3, 2022) (finding "exceptional reasons

militating against [defendant's] detention pre-sentencing" due to MDC conditions, including overcrowding, staffing issues, and lockdowns); *United States v. Days*, 19-CR-619 (CM) (S.D.N.Y. Apr. 29, 2021), ECF 35, Tr. 19 (describing MDC conditions during COVID-19 pandemic as "disgusting [and] inhuman as anything I've heard about any Colombian prison, but more so because we're supposed to be better than that").

Courts in the Eastern District of New York have expressed similar concerns and adjusted sentences accordingly. *See United States v. Forbes*, 22-CR-97 (RK) (E.D.N.Y.) (MDC's condition as one factor in sentencing defendant to non-custodial sentence); *United States v. Colucci*, 23-CR-417 (GRB) (E.D.N.Y. Aug 5, 2024) (sentencing defendant to nine months in prison, but ordering that if BOP designated the defendant to the MDC, the Court would vacate the sentence and resentence to home incarceration.).

### D. Conclusion

For the reasons set forth above, we respectfully move this Court to revoke the detention order issued by the Magistrate Judge and release Alon under the conditions proposed above. Thank you for your consideration.

Respectfully submitted,

/s/ Howard Srebnick
Howard Srebnick
Fla. Bar 919063
(*Pro Hac Vice Forthcoming*)
BLACK SREBNICK, P.A.
201 South Biscayne Boulevard, Suite 1300
Miami, FL 33131
HSrebnick@RoyBlack.com
*Attorney for Defendant Alon Alexander*

Cc: All counsel via ECF