Polygraph Examination of Oren Alexander on January 13, 2025
PRIVILEGED ATTORNEY WORK PRODUCT



**Tampa Polygraph Services, LLC**
James Orr Polygraph Examiner
FBI Special Agent, retired

(813) 504-2533  orrpoly@gmail.com
14502 N. Dale Mabry Highway, Suite 200  www.tampapolygraphservices.com
Tampa, Florida 33618

OREN ALEXANDER
POLYGRAPH EXAMINATION REPORT
POLYGRAPH EXAMINATION DATE: JANUARY 13, 2025
DATE PREPARED: JANUARY 14, 2025

PREPARED FOR:
RICHARD C. KLUGH, P.A.
40 NW 3RD STREET, PENTHOUSE 1
MIAMI, FLORIDA 33128

REPORT BY:

JAMES T. ORR

CASE ID: 25-01133289

Polygraph Examination of Oren Alexander on January 13, 2025
PRIVILEGED ATTORNEY WORK PRODUCT

**TABLE OF CONTENTS**

Page 2……………………………………………………… Table of Contents

Page 3……………………………………………………… Request for Polygraph Examination

Page 3……………………………………………………… Background

Page 3……………………………………………………… Suitability

Page 4……………………………………………………… Consent and Interview

Page 4……………………………………………………… Relevant Questions

Page 4……………………………………………………… Methodology

Page 5……………………………………………………… Examination Techniques

Page 5……………………………………………………… Chart Evaluation

Page 5……………………………………………………… Instrumentation

Polygraph Examination of Oren Alexander on January 13, 2025
PRIVILEGED ATTORNEY WORK PRODUCT

**REQUEST FOR POLYGRAPH EXAMINATION**

Richard C. Klugh, Esq. made a request of James T. Orr at Tampa Polygraph Services, LLC that his client, Oren Alexander, be afforded a polygraph examination to determine whether Oren Alexander ever had sex with any woman he knew had been covertly given drugs.

**BACKGROUND**

Review of the indictment and conversations with the attorneys revealed the following:

On December 11, 2024, the United States District Court for the Southern District of New York returned a superseding indictment charging brothers Alon, Oren and Tal Alexander with:
Count One - Conspiracy to Commit Sex Trafficking in violation of Title 18, United States Code, Section 1594©.
Count Two – Sex Trafficking of Victim 1 by Force, Fraud, or Coercion in violation of Title 18, United States Code, Sections 1591(a) and (b)(1), and (2).
Count Three – Sex Trafficking of Victim 2 by Force, Fraud, or Coercion, in violation of Title 18, United States Code, Sections 1591(a) and (b)(1), and (2).

The indictment alleges that, starting in or about 2021, Alon Alexander, Oren Alexander and Tal Alexander, and others known and unknown, operated a long-running sex trafficking scheme, as part of which they raped and sexually assaulted women whom they provided with material benefits, including domestic and international travel to vacation destinations, luxury accommodations at high-end hotels and vacation properties, and access to other luxury experiences and events. The scheme was alleged to have occurred in, among other places, Manhattan, New York and Miami, Florida, where the brothers maintained residences and where their businesses were based.

It is alleged that the brothers drugged their victims and, at times, used physical force to rape and sexually assault the victims, sometimes alone and sometimes together.  They are alleged to have worked with other men to arrange these events and trips. The brothers deny the allegations and assert that the alleged victims referenced in the indictment, as well as other women who have made allegations against them, were not surreptitiously drugged and sexually assaulted.

**SUITABILITY FOR POLYGRAPH EXAMINATION**

Through observation and interview, Oren Alexander appeared to be physically and medically suitable to take a polygraph examination.   He also appeared lucid and rational during the pre-test interview. An Acquaintance Test was administered as the first chart and revealed sufficient electro-dermal and cardiovascular reactivity to effectively conduct a polygraph examination.

Polygraph Examination of Oren Alexander on January 13, 2025
**PRIVILEGED ATTORNEY WORK PRODUCT**

**CONSENT AND INTERVIEW**

On January 13, 2025, Oren Alexander voluntarily agreed to an interview by means of a polygraph examination at the Federal Detention Center, 33 NE 4th Street, Miami, FL 33312. The examination room used was reasonably free of distractions. He stated that he understood the purpose for the polygraph examination and indicated willingness to take the polygraph examination by signing the "Consent to Polygraph Agreement" form after being given an overview of the polygraph process. Based on the background information noted above, the following relevant questions were formulated.

**RELEVANT QUESTIONS**

A polygraph examination was administered using the following relevant questions, all of which were answered "No":

1. Did you have sex with ▇ when you knew she had been covertly given drugs?
2. In New York, did you have sex with ▇ when you knew she had been covertly given drugs?
3. Did you have any kind of sex with ▇ when you knew she had secretly been given drugs?
4. In New York, did you have any kind of sex with ▇ when you knew she had secretly been given drugs?

*"Sex" was defined as vaginal, anal or oral sex.*
*▇" was defined as being Victim 2 in Count Three of the indictment.*
*"knew" was defined as he would know if he had personally drugged her, he saw somebody drug her or somebody told him they drugged her.*
*"Covertly and secretly" were defined as ▇ being given drugs without her knowledge and consent.*
*"Drugs" were defined as being GHB, mushrooms, cocaine, roofies, or any other drug that could be used as a date rape drug.*

**METHODOLOGY**

The technique used to examine Mr. Alexander was a Utah Zone Event Specific Probable Lie Comparison Question Test. Studies leading to its creation began in the 1970s through the efforts of Drs Raskin, Kircher and Honts and over 30 years of research support its principles. The Utah ZCT meets the APA January 1, 2012, Validated Techniques Requirement for Evidentiary testing, Paired Testing, and Investigative Testing. Note: Dr. Raskin testified in U. S. District Court, Middle District of Florida, in December 2014, that he reviewed a polygraph examination conducted by this examiner and that it was a properly conducted Utah examination meeting the standards of the profession. Dr. Honts has also reviewed an exam conducted by writer and found it to be properly and professionally conducted.

Polygraph Examination of Oren Alexander on January 13, 2025
**PRIVILEGED ATTORNEY WORK PRODUCT**

**EXAMINATION TECHNIQUES**

A stimulation test was administered as the first chart to assess the examinee's physiology and reactivity by directing the examinee to lie on a particular number in a sequence of numbers. During this process, the examinee's basic reactivity was assessed. This assessment is used to evaluate fitness for continued testing, to adjust the instrument to the examinee's physiology and for comparison with the subsequent polygraph charts. The examinee's response patterns were acceptable, and he reacted appropriately when telling a directed lie. A comparison question technique was utilized using probable lies. Four relevant questions were asked and three charts were collected.

**CHART EVALUATION**

Spot analyses are made at the relevant question spots for each of the four components used: two components used to record respiratory responses, one component used to record galvanic skin response (sweat gland activity), one component to record changes in cardiovascular activity (changes in blood pressure and heart rate) and one component to record peripheral vasomotor activity (changes in blood volume in the extremities). The analysis is completed by comparing the reactions to relevant questions with the reactions to comparison questions.

Sufficient reactivity was observed and quantified, thus allowing for objective numerical scoring using the Empirical Scoring System-Multinomial (ESS-M). Numerical scoring is the standard for both evidentiary and investigative examinations. There were no indications of overt distortion of the data.

Research has shown that the most accurate way to evaluate a diagnostic polygraph examination is to use grand total scores. With ESS-M, a grand total score of +3 or greater is an indicator of truthfulness and a grand total score of -3 or less is indicative of deception. Total numerical scores between +3 and -3 are considered inconclusive, unless there is a spot score of -7 or less, which is indicative of deception, using the two-stage rule. The examiner's evaluation resulted in a score of +29. These analytic results support the conclusion that there were NO SIGNIFICANT REACTIONS INDICATIVE OF DECEPTION in the loading of recorded changes in physiological activity in response to the relevant test stimuli during this examination.

Objective Scoring System 3, a computer scoring algorithm, concurred with the examiner's opinion with a probability of error of 0.005.

**INSTRUMENTATION**

A Lafayette LX6 computerized polygraph with Software Version 11.8.6 was utilized for this examination. This instrument is pre-calibrated by the manufacturer with a stable long-term circuit design. In accordance with manufacturer recommendations, self-calibration of the

Polygraph Examination of Oren Alexander on January 13, 2025

**PRIVILEGED ATTORNEY WORK PRODUCT**

various sensors was conducted prior to the examination, and all were found to be acceptable. Lafayette Activity Monitors were used for feet, seat, and arms during this examination.

James T. Orr

## Lafayette Instrument Company
# Objective Scoring System - Version 3

*By Raymond Nelson, Mark Handler and Donald Krapohl (2007)*

| | |
|---|---|
| Result | **No Significant Reactions** |
| Description | **p-value: 0.005 - Probability this result was produced by a deceptive person** |
| Exam Type | Event Specific/Single Issue (Zone) |
| Scoring Method | OSS-3 Two-stage (Senter 2003) |
| Test of Proportions | 0.118 - No significant differences in artifact distribution |
| PF Name | 25-01133289 |
| Report Date | Monday, January 13, 2025 |
| Subject | Oren Alexander |
| Examiner | System Administrator |

### Spot Scores

| ID | p-value | Result |
|---|---|---|
| R1 | 0.601 | |
| R2 | < 0.001 | |
| R3 | < 0.001 | |
| R4 | 0.007 | |

### Decision Alpha (1 tailed)
*Cumulative normal distribution (Barland 1985)*

| Setting | Value |
|---|---|
| NSR | 0.050 |
| SR | 0.050 |
| Bonferroni corrected alpha | 0.013 |
| Test of Proportions (1 tailed) | 0.050 |

### Components

| Component | Weight |
|---|---|
| Pneumo | 0.19 |
| EDA | 0.53 |
| Cardio | 0.28 |

### Relevant Questions

| ID | Question Text | Answer |
|---|---|---|
| R1 | Did you have sex with ▇▇ when you knew she had covertly been given drugs? | No |
| R2 | In New York, did you have sex with ▇▇ when you knew she had been covertly given drugs? | No |
| R3 | Did you have any kind of sex with ▇▇ when you knew she had secretly been given drugs? | No |
| R4 | In New York, did you have any kind of sex with ▇▇ when you knew she had secretly been given drugs? | No |

### Charts Scored

| Exam | Chart | Date | Time |
|---|---|---|---|
| 3 | 1 | 1/13/2025 | 4:02 PM |
| 3 | 2 | 1/13/2025 | 4:16 PM |
| 3 | 3 | 1/13/2025 | 4:24 PM |

### Remarks



### Measurements
*(Kircher and Raskin 1988)*

**Exam 3 Chart 1**

| | C1 | R1 | C2 | R2 | C3 | R3 | R4 |
|---|---|---|---|---|---|---|---|
| P1 | A665 | A592 | A530 | A560 | A553 | A626 | A534 |
| P2 | A398 | A343 | A379 | A344 | A470 | A507 | A487 |
| EDA | 51 | 80 | 106 | 34 | 33 | 51 | 26 |
| Cardio | 54 | 77 | 61 | 26 | 62 | 67 | 13 |
| SE | 244 | 203 | 227 | 223 | 204 | 224 | 210 |
| AR | 131 | 121 | 116 | 122 | 119 | 121 | 117 |
| FT | 154 | 164 | 154 | 134 | 171 | 157 | 167 |
| MA | 133 | 127 | 129 | 127 | 119 | 121 | 130 |

**Exam 3 Chart 2**

| | C1 | R1 | C2 | R2 | C3 | R3 | R4 |
|---|---|---|---|---|---|---|---|

### Standardized Lognormal Ratios

**Exam 3 Chart 1**

| | R1 | R2 | R3 | R4 |
|---|---|---|---|---|
| P | | | | |
| EDA | -0.43 | 1.29 | 0.47 | 1.82 |
| Cardio | -1.50 | 3.00 | -0.76 | 3.00 |
| WMean | -0.80 | 1.88 | 0.04 | 2.23 |
| Mean | | 0.84 | | |

**Exam 3 Chart 2**

| | R1 | R2 | R3 | R4 |
|---|---|---|---|---|
| P | | | | |
| EDA | -1.79 | 1.20 | | -0.62 |
| Cardio | 1.52 | 1.62 | | -0.11 |

|     |      |      |      |      |      |      |      |
|-----|------|------|------|------|------|------|------|
| P1  | A675 | A604 | A554 | A705 | 594  | A614 | A752 |
| P2  | A592 | A580 | A620 | A804 | 816  | A698 | A873 |
| EDA | 17   | 102  | A69  | 23   | 65   | 48   | 57   |
| Cardio | 168 | 105 | 171 | 103 | 89 | A221 | 143 |
| SE  | 430  | 316  | 280  | 317  | 688  | 340  | 538  |
| AR  | 276  | 296  | 319  | 352  | 473  | 369  | 428  |
| FT  | 311  | 310  | 401  | 406  | 328  | 279  | 334  |
| MA  | 160  | 150  | 157  | 181  | 199  | 180  | 216  |

### Exam 3 Chart 3

|     | C1   | R1   | C2   | R2   | C3   | R3   | R4   |
|-----|------|------|------|------|------|------|------|
| P1  | A600 | A725 | A537 | A625 | A510 | A417 | A676 |
| P2  | A671 | A577 | A719 | A646 | A545 | A647 | A553 |
| EDA | 39   | 45   | 47   | 18   | 92   | 16   | 56   |
| Cardio | 51 | 80 | 54 | 42 | 21 | 39 | 49 |
| SE  | 212  | 191  | 248  | 218  | 226  | 218  | 192  |
| AR  | 310  | 253  | 320  | 303  | 256  | 312  | 293  |
| FT  | 143  | 141  | 182  | 160  | 171  | 141  | 151  |
| MA  | 181  | 138  | 187  | 165  | 165  | 177  | 163  |

|       |       |       |       |
|-------|-------|-------|-------|
| WMean | -0.64 | 1.34  | -0.44 |
| Mean  |       | 0.09  |       |

### Exam 3 Chart 3

|        | R1    | R2    | R3    | R4    |
|--------|-------|-------|-------|-------|
| P      |       |       |       |       |
| EDA    | 0.59  | 2.43  | 2.67  | 0.15  |
| Cardio | -3.00 | -0.09 | 0.30  | -0.91 |
| WMean  | -0.65 | 1.56  | 1.85  | -0.21 |
| Mean   |       | 0.63  |       |       |

### Channel Contributions

| Component | Proportion | Area  | Chart         | Proportion | ID | Proportion |
|-----------|------------|-------|---------------|------------|----|------------|
| Pneumo    | 1.000      | 1.000 | Exam 3 Chart 1 | 0.386     | R1 | 0.089      |
| EDA       | 0.000      | 0.000 | Exam 3 Chart 2 | 0.258     | R2 | 0.348      |
| Cardio    | 0.000      | 0.000 | Exam 3 Chart 3 | 0.356     | R3 | 0.305      |
|           |            |       |               |            | R4 | 0.258      |

Note: Non-normal values

### Results

**Weighted Mean**

| -0.70 | 1.59 | 0.94 | 0.53 |

**Grand Total Mean**

0.59

(Without Visual Inspection)

### Advanced Options - OSS-3 v1.9

**General Scoring Settings**

| | |
|---|---|
| Delete all zero measurements | Yes |
| Zero Threshold value | 1 |
| Allow a single CQ to score result (not for DLST) | No |
| Replace missing values with mean values | No |
| Check Extreme Contributions | No |
| Allow SR Result when extreme contr butions | Yes |

**Alpha Values (one-tailed)**

| | |
|---|---|
| Kruskal-Wallis | 0.1 |
| Non-Significant Response (NSR) | 0.05 |
| Significant Response (SR) | 0.05 |

**Test of Proportions**

| | |
|---|---|
| Test of Proportions alpha value (two-tailed) | 0.1 |
| Use Test of Proportions | Yes |
| Allow significant reaction result | Yes |
| Use all questions | No |
| Score neutral questions as control | No |

**Event Specific/Single Issue (Zone)**

| | |
|---|---|
| Use Bonferroni | Yes |
| Use Kruskal-Wallis | No |
| Minimum number of useable presentations for RQs | 2 |

**Measurement Periods**

| | |
|---|---|
| P1 | 15 |
| P2 | 15 |
| EDA | 15 |
| Cardio | 15 |
| All other | 15 |

# Curriculum Vitae

# Of

# James T. Orr

Tampa, Florida

813-504-2533

Fax: 813-920-3108

# CURRICULUM VITAE

James T. Orr

Tampa Polygraph Services, LLC

James Orr Investigations, LLC

Tampa, Florida

Business/Mobile: 813-504-2533

Fax: 813-920-3108

Email: orrpoly@gmail.com

Web: www.TampaPolygraphServices.com

## CONTENTS

I. EDUCATION AND GENERAL BACKGROUND

II. POLYGRAPH TRAINING AND CONTINUING EDUCATION

III. PROFESSIONAL EXPERIENCE AND ASSOCIATIONS

IV. POLYGRAPH EXAMINATIONS ADMITTED IN FEDERAL COURT

# I

## EDUCATION AND GENERAL BACKGROUND

1. Saint Clair County Community College, Port Huron, Michigan: AA in law Enforcement, 1974.

2. Oakland Police Academy, Oakland County, Michigan: Graduated in 1976 with top academic award.

3. Madonna College, Livonia, Michigan: B.S. in Criminal Justice, 1980.

4. University of Michigan-Dearborn: Two years of part-time studies toward a Master of Public Administration. No degree due to employment and relocation by the Federal Bureau of Investigation.

5. Westland City Police Department, Westland, Michigan: Police Cadet, 1974 – 1976.

6. Westland City Police Department, Westland, Michigan: Police Officer, 1976 – 1983.

7. Federal Bureau of Investigation: October 2, 1983 to January 1, 2011: Assigned as a Special Agent in Shreveport, Louisiana; Baltimore, Maryland and Tampa, Florida.

8. Tampa Polygraph Services, L.L.C.: Established January 2011; owner and polygraph examiner, conducting polygraph examinations in the United States and abroad.

9. James Orr Investigations, L.L.C.: Established July 2011; owner and primary investigator. Investigations since retirement from the FBI have included health care fraud, mortgage fraud, corporate fraud, insurance fraud, accident investigations, background investigations for police applicants, background investigative interviews of police chief candidates, investigative interviews for attorneys, surveillance and executive protection. Writer is also the contract special investigator for the Hillsborough County Attorney's Office and the Hillsborough County Administrator's Office.

10. Peak Credibility Assessment Training Center, Cape Coral, FL: April 2016 to present, Senior Polygraph Instructor in the United States and abroad, teaching basic and advanced classes. Peak Credibility Assessment Training Center is accredited by the American Polygraph Association and is recognized by the American Association of Police Polygraphists.

11. Academy of Polygraph Services, Fort Myers, FL: June 2012 through March 2016, primary instructor in the United States and abroad. The Academy of Polygraph Science is accredited by the American Polygraph Association as well as being recognized by the American Association of Police Polygraphists.

12. E-merging Technologies Group, Reston, Virginia: June 15, 2014 to December 2014, contract polygraph examiner for the United States Defense Intelligence

Agency (DIA) with a Top Secret/SCI security clearance.

II

## POLYGRAPH TRAINING AND CONTINUING EDUCATION

1. Basic Forensic Psychophysiology/Polygraph Examiner course, Department of Defense Polygraph Institute (later named Defense Academy of Credibility Assessment/now named National Center for Credibility Assessment), Fort McClellan, Alabama, January – April 1999. This was a fourteen-week course focusing on physiology, psychology, polygraph history and theory, chart interpretation, conducting examinations, instrumentation, interview and interrogation and other related polygraph studies.

2. FBI Annual Polygraph Examiners Conference, April 27-29, 1999 (24 hours training).

3. FBI Annual Polygraph Examiners Conference, July 10-14, 2000 (40 hours training).

4. FBI Polygraph Training and Certification, September 19-20, 2000. Eight hours of training and FBI polygraph examiner certification awarded.

5. Federal Interagency polygraph Seminar, FBI Academy, June 18-22, 2001 (40 hours training).

6. FBI Polygraph Unit In-service Training, FBI Academy, March 12-14, 2002 (24 hours training).

7. FBI Annual Polygraph Examiners Conference, April 21-26, 2002 (24 hours training).

8. FBI Annual Polygraph Examiners Conference, April 13-18, 2003 (24 hours training).

9. American Polygraph Association (APA) Annual Seminar/Workshop, August 3-8, 2003 (27.75 hours training).

10. CIA University, Cross-Cultural Training, April 22-23, 2004 (17 hours training).

11. Department of Defense polygraph Institute transition course from analog to computerized instrument, May 4-5, 2004 (16 hours training).

12. FBI Annual Polygraph Examiners Conference, June 14-18, 2004 (24 hours training).

13. Critical Incident Response Group (CIRG) National Center For The Analysis of Violent Crime Behavioral Analysis unit (BAU) Interview and Interrogation of Islamic Extremists Working Group, November 16-17, 2004 (16 hours training).

14. FBI Mid-Atlantic Region Polygraph Near East Interview and interrogation Workshop, December 1-2, 2004 (16 hours training).

15. FBI Annual Polygraph Examiners Conference, June 27-July 1, 2005 (24 hours training).

16. FBI Annual Polygraph Examiners Conference, May 22-26, 2006 (24 hours training).

17. FBI Lafayette LX 4000 Conversion Training, FBIHQ, January 12-16, 2007 (40 hours training).

18. FBI Annual Polygraph Examiners Conference, June 11-15, 2007 (24 hours training).

19. American Polygraph Association (APA) 42nd Annual Seminar, New Orleans, Louisiana, August 20-24, 2007 (37.5 hours of training).

20. FBI Annual Polygraph Examiners Conference, June 16-20, 2008 (33 hours training).

21. FBI Polygraph Electronic Signature training, FBIHQ, October 22-23, 2008 (16 hours training).

22. FBI Annual Polygraph Examiners Conference, June 22-26, 2009 (33 hours training).

23. Israeli Security Service Counter Terrorism Seminar, Tel Aviv and throughout Israel, November 29 – December 10, 2009 (80 hours training – Also served as Head of Delegation for FBI).

24. Department of Defense Countermeasures Comprehensive Course, Linthicum, Maryland, October 4-8, 201 (40 hours training).

25. Florida Polygraph Association Training Seminar, Melbourne Beach, Florida, June 3-5, 2011 (18 hours of training).

26. American Polygraph Association 47th Annual Seminar and Workshop, September 11-16, 2011, Austin, Texas (37.5 hours of training).

27. Florida Polygraph Association Randall Jones School for Continuing Studies training seminar of 16 hours pertaining to the study of Advanced Polygraph Techniques at Clearwater Beach, Florida, June 1-2, 2012. (16 hours of training)

28. Academy of Polygraph Science, Fort Myers, Florida; Examiner Refresher Course/Senior Examiner Course, November 26-30, 2012; 40 hours training.

29. Florida Polygraph Association Randall Jones School for Continuing Studies training seminar in Lake Mary, Florida, June 21-23, 2013 (18 hours of training).

30. E-merging Technologies Group at Defense Intelligence Agency (DIA), Reston, Virginia; orientation training for contract polygraph work for DIA, June 25-27, 2014 (24 hours of training).

31. Academy of Polygraph Science, Fort Myers, Florida; September 25-26, 2014 – 4 hours of Advanced Countermeasures training and 12 hours of Advanced Post Conviction Sex Offender Training, Psychology of a Sex Offender (16 hours total).

32. Academy of Polygraph Science, Fort Myers, Florida: March 25-26, 2015 – Advanced studies in various aspects of polygraph (18 hours of training).

33. American Polygraph Association 51st Annual Seminar/Workshop in Baltimore, Maryland, August 28 – September 2, 2016 (35.75 hours of training).

34. American Polygraph Association 52nd Annual Seminar/Workshop in Las Vegas, Nevada, August 28 – September 1, 2017 (25.75 hours of training).

35. Peak Credibility Assessment Training Center, Post Conviction Sex Offender Testing Course, Cape Coral, FL, March 19-23, 2018 (40 hours of training).

36. The Florida Polygraph Association study of Advanced Polygraph Techniques Seminar, Lake Mary, Florida, November 16-18, 2018 (18 hours of training).

37. The Florida Polygraph Association Randall Jones School for Continuing Studies of Advanced Polygraph Techniques Training Seminar, Daytona Beach, Florida, June 7-9, 2019 (14 hours of training).

38. The American Polygraph Association 54th Annual Seminar/Workshop in Orlando, FL. August 26-30, 2019 (32 hours of training).

39. Florida Polygraph Association Training Seminar, Melbourne Beach, Florida, June 11-13, 2021 (18 hours of training).

40. Florida Polygraph Association Training Seminar, Fort Lauderdale, Florida, October 22-24, 2021 (18 hours of training).

41. Florida Polygraph Association Seminar, Orlando, Florida, June 10-12, 2022 (18 hours of training).

42. Florida Polygraph Association Seminar, Orlando, Florida, November 16-19, 2023 (26 hours of training).

43. Florida Polygraph Association Seminar, Daytona Beach, FL, November 20-24, 2024 (26 hours of training).

## III

## PROFESSIONAL EXPERIENCE AND ASSOCIATIONS

1. Certified FBI Polygraph Examiner, 1999 – 2011.

2. Polygraph Examiner and Polygraph Coordinator for the Baltimore, Maryland FBI office, 1999 – 2005. Conducted examinations in all areas of FBI responsibility, including applicant screening, security examinations of on-board employees, criminal matters, foreign counter-intelligence, counter terrorism, witness protection, Office of Professional Responsibility (internal affairs) and polygraph exams conducted abroad involving criminal, intelligence, terrorism and vetting exams of foreign police, prosecutors, judges and prison officials. Also coordinated exams for four other examiners and myself

and provided field training, certification and mentoring of new examiners. Also periodically served in a temporary duty status at FBIHQ in the Polygraph Unit conducting exams and doing quality control review of field exams submitted by other examiners.

3. Polygraph Examiner and coordinator for the Tampa, Florida FBI office. Received transfer to Tampa for the purpose of assuming responsibility for the polygraph program there. Performed the same duties as described above in the Baltimore office. In both locations maintained high levels of exam quality and admission/confession rates while conducting over 2,300 exams for the FBI.

4. Owner, Tampa Polygraph Services, LLC, 2011 to present. Have conducted approximately 1,000 exams for private attorneys, public defenders, law enforcement, private companies, private individuals, military contractors, and international security consulting firms. Exams conducted in California, Florida, Georgia, Pennsylvania, Washington, D.C., Argentina, Colombia (Spanish interpreters), Costa Rica, Dominican Republic (Spanish interpreter), Ecuador (Spanish interpreter), Haiti (using Creole interpreter) and Panama. Have conducted well over 3,200 polygraph exams.

5. Primary Instructor, Academy of Polygraph Science, Fort Myers, Florida, an APA and AAPP accredited school, 2012 to 2016.

6. Senior Polygraph Instructor at Peak Credibility Assessment Training Center, Cape Coral, Florida, an APA and AAPP accredited school. Mr. Orr has been a guest lecturer at the University of Baltimore School of Law, Stetson University Law School, the University of South Florida Forensic Psychology course, the American Association of Police Polygraphists annual seminar in Louisville, Kentucky, The Arizona Polygraph Association annual polygraph seminar in Phoenix, the California Association of Polygraph Examiners annual seminar in San Diego, California, the Canadian Association of Police Polygraphists in Ottawa, Canada, the Deadwood, South Dakota Regional Polygraph Seminar, Florida Polygraph Association seminars, the Global Polygraph Network seminar in Buffalo, New York, the Indiana Polygraph Association annual seminar in Indianapolis, the Mississippi Polygraph Association annual seminar in Oxford, Mississippi, the Tri-State Seminar in Greenville, S. C., the Utah Polygraph Association and

      taught a 40 hour interview and Interrogation course to the Jamaican National Constabulary's Lottery Scam Task Force in Montego Bay for the U.S. Department of State and taught basic polygraph course for Ukrainian law enforcement in Kyiv for the U.S. Department of State.

7. Full Member of the American Polygraph Association, 2001 – present. Associate member, 1999 – 2001.

8. Former full member of the Maryland Polygraph Association.

9. Full member of the Florida Polygraph Association, 2005 – present. **FPA Certified Polygrapher.** S*erving as a member of the Board of Directors since June 2021, Vice President-Private since June 2022, and Chairman of the Board since December, 2023. Recipient of the November 2022 Outstanding Achievement Award in recognition of outstanding performance in the field of polygraph.*

10. Full member of the American Association of Police Polygraphists, 2013-present. **Recipient of the 2017 American Association of Police Polygraphists Region V Richard O. Arther Director's Award.**

11. Former member of the FBI Agent's Association.

12. Full Member of the Society of Former Special Agents of the FBI, January 2011 – present; National and Suncoast Chapters.

13. Member, Florida Association of Licensed Investigators, 2011-2019.

14. As a licensed private investigator, have conducted investigations for law enforcement (background), Hillsborough County Attorney's Office, defense and civil litigation attorneys, major companies, celebrities and television producers, as well as conducting electronic counter-surveillance sweeps.

## POLYGRAPH EXAMINATIONS ADMITTED IN COURT

Mr. Orr conducted a polygraph examination on Jesus Hernando Angulo Mosquera in which that examination has been admitted as evidence, without stipulation, at trial. *United States District Court, Middle District of Florida, Tampa Division. United States of America vs Jesus Hernando Angulo Mosquera, Case No.: 8:14-cr-379-T-36TGW, Document 161, Filed 04/09/2014. Subsequent to an evidentiary hearing on 12/23/2014 on the admissibility of polygraph evidence*

*in this matter under Federal Rule 702, the court granted and will permit the polygraph evidence to be admitted at trial.*

Mr. Orr also testified as an expert witness before Judge Honeywell prior to sentencing regarding a polygraph examination he conducted on Laura Leyva in a healthcare fraud case. *United States District Court, Middle District of Florida, Tampa Division. United States of America vs Laura Leyva, Case No.: 8:14-CR-00107-CEH-AEP, Document 42, Filed 10/26/2014.*

In another case, United States of America vs Kathryn Jasen, Glenn Jasen, Case No.: 8:15-cr-214JDW-TBM-2, United States District Court, Middle District of Florida, a polygraph report of Mr. Orr was utilized by an attorney representing the defendant post-conviction. The report, prepared subsequent to a polygraph exam for the original attorney, was allowed by Judge James D. Whittemore to be considered for mitigation purposes during sentencing.

These three polygraph exams were featured in the August 2017 edition of "The Champion", a professional periodical of the National Association of Criminal Defense Lawyers. The article was authored by Christopher Kerr and was titled "Effective Defense Polygraphs". This article was reprinted with permission in the January/February edition of the American Polygraph Association journal.

In United States of America vs Deborah Pierre, Billy Altidor and Evanie Louis, Case No.: 6:19-cr-14-ORL-31 DCI, United States District Court, Middle District of Florida, polygraph reports of Mr. Orr were utilized in sentencing hearings by two attorneys from different law firms who represented two of the defendants in this case. The third defendant was acquitted, and the two remaining defendants risked losing cooperation credit for testifying against the acquitted co-defendant. After Judge Gregory A. Presnell admitted their polygraph exams, they revealed they had not committed perjury in testifying against their co-defendant and they got full credit for cooperation at sentencing.

In United States of America vs Bailynson; et al, Case No.: 9:18-cr-80124-RAR, United States District Court, Southern District of Florida, Mr. Orr appeared at an evidentiary hearing in Miami to testify regarding a polygraph examination conducted on a co-defendant, Mark G. Agresti, M.D., in this matter post-conviction. Dr. Agresti is seeking a new trial. The prosecution indicated they had no questions to ask of the polygraph examiner and agreed to stipulate the admittance of the polygraph report. U. S District Court Judge Rodolfo A. Ruiz II said that he had the examiner's report and CV and agreed to admit the report into evidence without testimony. Judge Ruiz II thereafter granted Dr. Agresti a new trial.

MIAMI-DADE STATE PROSECUTOR'S OFFICE CASE:
Justice Project Polygraph: Thomas Raynard James was arrested on May 9, 1990, for the January 17, 1990 robbery and murder of Francis McKinnon in Coral Gables, Florida. He was

subsequently convicted based solely on eye-witness testimony, with no physical evidence to connect him to the crime.  The Miami-Dade State Attorney's Office (SAO) eventually looked into the case under its Justice Project.  The final, and "very important" hurdle, in their investigation was a polygraph examination of the defendant conducted by James Orr on April 25, 2022.  The SAO shared the cost of the exam with defense attorney Natalie Figgers and the State's polygraph examiner, Scott Weigman, monitored the exam.  Mr. James was found by both examiners to be truthful when he denied any involvement in the robbery/murder.  On April 27, 2022, in the Circuit Court of the Eleventh Judicial Circuit In And For Miami-Dade County, Florida, Case No. F90-23928, Judge Miguel de la O issued an order vacating all judgements, convictions and sentences in this case and Mr. James was released after serving 32 years of his life sentence.

Court of Arbitration for Sports, Lausanne, Switzerland:
Testified remotely by video feed on April 21, 2023, regarding a polygraph examination I conducted on November 14, 2022, for attorney Ariel Reck on a professional soccer player regarding a drug test that showed positive for a substance banned by the Federation of International Football Association (FIFA).

On February 9, 2024, James Orr testified in the Circuit Court of the 18th Judicial Circuit, Seminole County, Florida, Case No.: 2022-DR-002673 before the Honorable Melissa Souto in a Hearing for an Amended motion to dissolve final judgement of injunction. The expert testimony provided was regarding the August 16, 2022, polygraph examination conducted by Mr. Orr of Masudi Kisitu regarding an allegation of sexual assault.