UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.                                                    24-00676-VEC

ALON ALEXANDER, OREN
ALEXANDER, and TAL ALEXANDER,

    Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
INDICTMENT BASED ON FORUM AND VENUE MANIPULATION
AND REQUESTS FOR ALTERNATIVE AND ADDITIONAL RELIEF**

Oren Alexander and Alon Alexander[1] move, through counsel, to dismiss the indictment based on forum and venue manipulation by the government in its improper employment of grand jury and judicial proceedings to perform a law enforcement function. The government's actions resulted in a structural error in the grand jury proceedings, a "constitutional deprivation" of Defendants' Fifth Amendment grand jury rights that also "affect[ed] the framework in which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279 (1991). Further, the government in Count 10 charged impermissible 18 U.S.C. § 3238 venue allegations that implicate manipulation of both grand jury and judicial process. The procedures employed, including obtaining sealing of an indictment for the apparent purpose of venue manipulation, without disclosure of the use of sealing for venue and forum shopping goals, and using the arraignment process under Fed. R. Crim. P. 10 in a manner to artificially effectuate a design to create venue, caused the defendants to unknowingly choose between exercise of their speedy trial and effective counsel rights. The government, as part of its coordinated

---

[1] Tal Alexander adopts this motion; though he is not charged in Count 10, charging 18 U.S.C. § 2241(a)(1), (b)(2), 3238, 7, and 2, the error and misconduct in the grand jury proceeding infected the entire indictment.

venue-creation and forum-shopping action, obtained from the grand jury an unsealed indictment (now labeled S2) which, it appears, was never intended to be pursued despite the setting of an arraignment. The government then obtained sealing of the *real* indictment (S3) in a manner suggesting S2 was intended to have no effect other than pursuit of the ultimate forum-shopping, venue-manipulation goal. None of these actions was appropriately predicated under the federal rules or criminal practice. "[E]ven if the defendant shows no prejudice, delay in unsealing the indictment would be unreasonable if there were no legitimate prosecutorial need for it." *United States v. Watson*, 599 F.2d 1149, 1156 n.4 (2d. Cir. 1980).

The defendants request that the Court order production of grand jury minutes regarding the new grand jury that returned the indictment (which was labeled "sealed" when presented to it), and the original grand jury that failed to return any indictment as to Count 10; and order the government to produce discovery, including any and all *ex parte* communications regarding this matter, as well as any and all internal communications regarding or related to the decision to employ the grand jury in this unprecedented and unconstitutional fashion. Defendants also request the unsealing of any court orders related to the Second and Third Superseding Indictments. Defendants state the following in support of this motion:

## Procedural Background

The defendants were arrested at their separate homes in Miami Beach, Florida on December 11, 2024, on a superseding Indictment returned in this case the same day. They were released on bond on "parallel" state court charges on which they were arrested the same day, *see* DE:30 (statement by government counsel), and have remained in federal custody since December 13, 2024. The government improperly removed Oren Alexander from the Southern District of Florida on

January 7, 2025, and returned him shortly thereafter. Both Defendants were thereafter ordered removed to the Southern District of New York and placed in custody in the Eastern District of New York (Brooklyn MDC). Their applications for release from their Brooklyn MDC custody is pending on appeal, *United States v. Alexander*, 2d Cir. No. 25-223 (oral argument conducted June 10, 2025).

After the original grand jury in this case expired this year, the government proceeded to go to another grand jury and obtained, on May 8, 2025, *two* overlapping indictments against the Defendants. As to one of the indictments, the government sought sealing; *see* DE:86 (docket entry indicating indictment was entered on June 10, 2025, but "filed under seal" on May 8, 2025). That indictment, which the government appears to refer to as the Third Superseding Indictment (though it is unclear which indictment was returned first or if they were returned simultaneously), contained an additional Count 10.

Count 10 charges that the defendants violated 18 U.S.C. § 2241 (with regard what apparently is a Miami-Bahamas-Miami cruise). The "S3" indictment was labeled "sealed" when presented to the grand jury, DE:86:1, and alleges that Alon Alexander and Oren Alexander, "at least one of whom is expected to be arrested for this offense in the Southern District of New York," violated § 2241 while on a Bahamian-flagged cruise ship. DE:86 at 12. Section 2241 is a high seas offense for which 18 U.S.C. § 3238 establishes by law specific requirements as to venue. *See* U.S. Const., Amend. VI (providing the right to trial in the state and district wherein the crime shall have been committed, which district shall have previously been ascertained by law); 18 U.S.C. § 3238 (venue lies in the district where the defendant "is arrested or is first brought" or in "the district of the last known residence of the offender").

After noticing the Third Superseding Indictment's docket entry, at DE:86, showed the

3

indictment was "filed under seal" on May 8, 2025 — the same day the Second Superseding Indictment was returned — defense counsel reached out to all three attorneys on the prosecution team via e-mail on Thursday, June 12, 2025, at 10:01 a.m, asking them to confirm that the Third Superseding Indictment was in fact returned on that date, and if so requesting a copy of the sealing order. Defense counsel's email also inquired as to whether this was the same grand jury that returned the original indictment; whether the term of that grand jury had been extended; and, if so, whether the government had a copy of the order extending that term. The government replied on Friday, June 12, at 1:27 p.m., indicating:

> The S3 indictment was returned on May 8th under seal, pending Alon and Oren's arrest on Count 10. As you will recall, after the unsealed S2 indictment was returned on May 8th, we asked for an earlier arraignment date. Ultimately the June 10th date was selected for the convenience of counsel in Florida. The term of the grand jury that returned the S1 indictment in December 2024 had expired by May 2025, and a different grand jury returned the S2 and S3 indictments last month.

However, defense counsel requested the June 10, 2025, date based on a scheduled oral argument and having no knowledge of the government's plan to arraign not on the indictment defense was advised had been returned, but on an undisclosed indictment raising a foreign offense.

Upon learning of this new count and the apparent misuse of the grand jury and arraignment process, defendants have promptly sought the relief requested in this motion so as to not further delay resolution of critical issues, including discovery matters material to effective trial preparation and potentially affecting speedy trial rights.

Notably, had this Court *granted* defendants' motion to waive appearance at their arraignments, they would still not know about this Third Superseding Indictment. And in opposing the request to waive their appearances, there was no disclosure by the government that its apparent

actual indeed essential to the government reason for opposing the defense was to accomplish the intended venue manipulation and forum-shopping.

## Introduction and Factual Background

The government, no more than any other party, may not impermissibly forum shop or manufacture venue or jurisdiction through misleading use of judicial processes or in providing misinformation to officers of the courts who rely on such misinformation to their detriment in addressing judicial orders and procedures. *See Boe v. Marshall*, 767 F. Supp. 3d 1226 (N.D. Ala. 2025) (imposing harsh sanctions for forum-shopping in case even where attorneys purported forum-shopping actions were via conduct expressly contemplated by rules and applicable case law).

The government here enlisted defense counsel in causing a delay in the provision of notice to the in-custody defendants of the charges they face, effecting unwarranted delay of needed investigation for defense of those charges, and upending the management of defense resources, including choice of counsel decisions and experts. With full knowledge that an entire schedule of judicial proceedings had been set, DE:66, based on a motion-filing deadline of June 16, 2025, that was just six days after the scheduled arraignment (a filing deadline and schedule that was already reset once due to the government's returning the second superseding, stalking-horse indictment, S2, days before the first motions deadline), the government concealed from defense counsel that the Third Superseding Indictment had been returned May 8, 2025, leading defense counsel to believe they need only address a long-awaited[2] second superseding indictment that had been returned on May 8, 2025, and leaving defense counsel unable to press for unsealing of the simultaneous Third

---

[2] *See* DE:60 (defense request for the government to comply with its own announced superseding schedule).

Superseding Indictment, which they of course would have done given the motion and related deadlines.

The premise the government was operating on was that it is permissible ostensibly to string along defense counsel into prejudicing their clients' rights in this manner. There was simply no reason to delay bringing the defendants to this Court for an initial appearance under Fed. R. Crim. P. 5 on the new charges or to delay for more than a month the provision to the defense of the crucial information that an extraterritorial crime was now being charged against the defendants. There was no reason for the government to believe that the defense would have opposed such an initial appearance, no matter how little notice was given to the defense, if that was what was necessary to unseal the indictment and to permit the defense to perform its essential Sixth Amendment role. Instead, the government sought to schedule an arraignment on the Second Superseding Indictment, for which defense counsel requested a date in June to coincide with their scheduled oral argument in the appellate court — completely unaware of the calculated switch six days before the dispositive motions deadline.

The circumstances, timeline, and concealment suggest that the government's sole purpose in sealing the indictment and in failing to bring the defendants to Court for an initial appearance on this new charge — which is untethered to the Count 1 conspiracy or any other charge in the indictment — was to design a means to use the time, resources, judicial processes involved to create venue in this District through what to defense counsel reasonably appears to be dissimulation in an unprecedented and permanently trust-destroying manner that this Court should not condone, much less permit use of judicial or grand jury process to facilitate.

In this case, the resulting pretense that the defendants were taken from the Eastern District

6

of New York to the Southern District of New York not to face the new Third Superseding Indictment, but rather a Second Superseding Indictment on which notably no arraignment was actually ever even anticipated or attempted by the government compels relief. By means of this conduct, the government as it had apparently advised the grand jury it would, thereby bringing the new grand jury into the operative component of the plan apparently seeks to claim that it had not encountered and obtained custody of the defendants in the Eastern District of New York in relation to the Third Superseding Indictment and that the transfer of the defendants to this District was solely for the Second Superseding Indictment arraignment (which, as noted, never occurred or was even mentioned again[3]).

The Second Superseding Indictment has taken on the character of a complete fallacy never at any point a serious charging document brought with intent even to be arraigned on, but rather an a tool falling within a design to create venue. When, on the morning of June 10, 2025, a delivery to the defendants of warrants related to the Third Superseding Indictment occurred in the courthouse, defense counsel were across the street at the Court of Appeals for oral argument. *Still*, defense counsel were not told of these machinations then and did not learn of it until they arrived in court for the afternoon arraignment on the Second Superseding Indictment, only to learn that indictment was a false flag.

The convoluted set of actions described above were meant to effectuate the new indictment's claim of probable cause that the defendants were "expected to be arrested for this offense in the Southern District of New York." DE:86:12. All of this amounted to a structural defect that resulted

---

[3] Notably, the docket order reflecting the June 10 arraignment on the Third Superseding Indictment refers to it as the Second Superseding Indictment. In court, however, the magistrate judge referred to all ten counts charged in the *Third* Superseding Indictment.

in a significant constitutional rights deprivation, given the government's distortion of the grand jury's important safeguard function and using that body instead as an arm of the prosecution's venue manufacture. The government's conduct caused substantial delay-related prejudice to the defendants and violated their Fifth Amendment rights to due process and to indictment by a grand jury and their Sixth Amendment rights to effective counsel and to venue in a district "previously ascertained by law." U.S. Const. Amend. VI. The venue asserted here was in no way contemplated by law. Probable cause could only be established by the government's alerting the grand jurors to its plans. All of this was done by the government so as to forum shop so as to assert venue in the Southern District of New York.

Importantly, it is likely that the government was aware of the cruise-ship allegations when the defendants were arrested in the Southern District of Florida and when Oren Alexander was first illegally removed from the Southern District of Florida on January 7, 2025, and returned to the Southern District of Florida. The cruise ship evidence was likely obtained by the government prior to the Miami bond hearings, as the government claimed it had obtained evidence of "approximately 40" sexual misconduct allegations and used those allegations as a basis for maintaining the defendants in custody, on the theory that they related to the Count 1 trafficking conspiracy. At the defendants' initial appearance in Miami, for example, the government made reference to having spoken to over 40 women who had accused the defendants of sexual assault and indicated that it would supersede on that basis, suggesting prior knowledge as to the individual alleged to be the victim in Count 10. But the government appears to have sought to avoid recognizing the cruise ship allegation at the time of the Miami custody, thereby preserving the ability to later forum shop.

Discovery and a hearing are warranted to determine when the government learned of this

8

allegation and when it interviewed the witness charged in Count 10. Evidence related to improper venue and prosecutorial misconduct must be produced under *Brady v. Maryland*, and the defense request such evidence in connection with this motion. This includes but is not limited to any and all *ex parte* communications regarding this matter; any sealed orders or other sealed court documents entered in relation to this matter; any and all internal communications regarding this plan; grand jury minutes and transcripts; and any and all materials in the government's possession related to the alleged victim in Count 10.

## Memorandum of Law

**I. The abuse of the grand jury to delay notice of, and arraignment on, Count 10; combined with improper grand jury conduct directed to manipulation of venue and judicial processes amounted to structural error warranting dismissal of the Indictment.**

    A. <u>The government manipulated venue in violation of the law to further its forum-shopping aims</u>.

If the government had wanted to proceed properly Count Ten, it could have done so by following the law, but it chose a different path. The Sixth Amendment provides that a trial shall be held in the "district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI. For offenses on the high seas, 18 U.S.C. § 3238 provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

"It is settled" that "'[f]irst brought' within the context of the statute means first brought in custody

9

with liberty restrained." *United States v. Erdos*, 474 F.2d 157, 161 (4th Cir. 1973). "Venue shall be in the district in which the offender "is arrested or is first brought" means simply "arrested" i. e., that venue is in that district within the United States where the offender is first restrained of his liberty in connection with the offense charged." *United States v. Erdos*, 474 F.2d 157, 160 (4th Cir. 1973) (citing *United States v. Ross*, 439 F.2d 1355, 1358 (9th Cir. 1971); *United States v. Provoo*, 215 F.2d 531, 537 (2d Cir. 1954) (interpreting prior "where the offender is found" language in statute to "mean the district in which the defendant is first apprehended or arrested or taken into custody, under charges later found in the indictment") (internal quotation marks omitted); *Chandler v. United States*, 171 F.2d 921, 927, 932-33 (1st Cir. 1948); *Kerr v. Shine*, 136 F. 61, 63-65 (9th Cir. 1905)). As applicable here, the district where the defendant was first taken into custody or arrested was the Southern District of Florida.

The "in connection with the offense charged" language does not appear in the statue, but only in the case law. Count 10 should be deemed connected with the other charges in the Indictment as the government joined them in a single indictment. *See* Fed. R. Crim. P. 8(a) (providing for joinder of offenses that are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan"). Accordingly, venue would only be proper in the Southern District of Florida where the defendants were first arrested on the First Superseding Indictment; that is, first arrested in connection with the offense, as well as where they reside. In bond proceedings associated with that first arrest, the government made representations about how the charges involved allegations by "over 40 women," seemingly including the person now alleged to be the victim of Count 10 and describing the charges as a broad indictment against any and all sexual assaults and rapes allegedly committed by the defendants. It

10

is thus clear that the defendants were "first arrested" for purposes of the statute in the Southern District of Florida — not in the Southern District of New York.

This makes clear that an indictment as to Count 10 could only have been brought in the Southern District of Florida for two reasons. One, Oren and Alon Alexander were first arrested in the Southern District and brought into the Southern District of Florida from state custody on or about December 19, 2024. *See* 1:24-mj-04616-EFD*,* DE:4,5 (Dec. 20, 2024). Second, both defendants admittedly reside in the Southern District of Florida.

But that is not what happened. The government instead chose to involve the grand jury in a plan to convey the defendants to the Southern District New York on an arraignment pretense so that they could be "arrested" there; the government invited the grand jury to predict the future via a legally deficient probable cause finding as to nexus.

The usual practice for extraterritorial crimes is to file a complaint alleging the offense, obtain a warrant, and arrest the defendant when arrest is feasible. *See Provoo*, 215 F.3d at 537 (interpreting prior "is found" language in statute to mean venue is based on where defendant is apprehended or arrested or taken into custody "under charges ***later found*** in the indictment") (emphasis added). The government did not take that readily-available step in this case because even with extended sealing of the indictment, the delay in effectuating an arrest until the happenstance of an appearance of the defendants in the Southern District of New York would have placed the government in even greater peril and would on its face risk an absurdly lengthy delay. More importantly, if a separate complaint had been filed and the defendants arrested per usual practice on that complaint, the arrest would naturally have occurred at Brooklyn MDC, in the Eastern District of New York, foiling the

government's forum selection plan.[4] So the government embarked on a legally foreign cruise of its own: asking the grand jury to predict where the defendants might be deemed to be first arrested in the future, a tactic for which there is no reported precedent and no prior known abuse of the grand jury process in that manner.

> B. The government's manufacturing of venue and misuse of the grand jury as an arm of law enforcement resulted in a structural infirmity in the grand jury proceeding that warrants dismissal.

In choosing to chart a new perilous course, the government went overboard unreasonably involving the grand jury in law enforcement functions, destroying that body's character as constituted under the Fifth Amendment, a neutral body of citizens ***distinct*** from the law enforcement function. The prediction model used by the government to pursue its novel, uncharted attack on the defendants' Indictment Clause rights is invalid and would create havoc if endorsed.

Post-indictment venue as to Count 10 was entirely manufactured by the government. The Second Circuit has indicated that concerns may arise when a prosecution "lures a defendant to a distant district for some minor event simply to establish venue." *United States v. Myers*, 692 F.2d 823, 847 n.21 (2d Cir. 1982) (citing *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973) (rejecting the government's attempt to create federal jurisdiction by luring a defendant into placing a telephone call across a state line)); *see also Archer*, 486 F.2d at 681 ("Whatever Congress may have meant by [18 U.S.C.] § 1952(a)(3), it certainly did not intend to include a telephone call manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime").

What occurred here involves more serious prosecutorial misconduct than that which occurs

---

[4] Indeed, to the extent that defendants were not arrested in the Southern District of Miami, they were arrested in the Eastern District of New York, when the marshals picked them up there on the Third Superseding Indictment.

12

when the government manufactures underlying criminal conduct to form the basis for a charge of venue or interstate nexus *then* taken to the grand jury, illustrating why dismissal of the indictment in its entirety is proper here. Generally, when manufactured venue or manufactured jurisdiction is alleged, the government manufactures conduct *prior* to bringing the charge to the grand jury. But here, the government lured the defendants to the Southern District of New York under the guise of arraignment on an ultimately faux indictment they never intended to prosecute. This indictment was only made necessary by the government's seeking to deputize the grand jury to perform a law enforcement function in a total reversal of the grand jury's constitutionally established role.

The grand jury is tasked with returning a probable cause finding as to venue, *which must be independently established* for that probable cause finding to occur. But here, by contrast, the grand jury was used to *create* venue by the government's (1) asking it to return a pretextual indictment, thereby asking the grand jury to play a role in creating the chargeable conduct, an entirely circular role, and one at odds with the grand jury's core function to evaluate charged conduct that has already occurred; and (2) asking it to make a probable cause finding as to the government's own future behavior.

This goes well beyond the manipulation of venue or jurisdiction as discussed in the case law. It reflects a much more serious level of prosecutorial abuse of process than discussed in such cases because it involves the grand jury portion of proceedings rather than the investigative portion of proceedings. *See Myers*, 692 F.2d at 847 (noting that court's supervisory power has on occasion been used to discipline prosecutorial irregularities, particularly in front of grand juries; distinguishing that from using supervisory powers a[s] general corrective authority over the conduct of criminal investigations).

The government undermines the grand jury's safeguard function when it commandeers it to create artificial and improper venue in furtherance of its forum-shopping aims. "[T]he substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." *Smith v. United States*, 360 U.S. 1, 9 (1959). "[T]he intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Id*. The government here abused its position of power, the non-adversary nature of a grand jury proceeding, the court's sealing process[5], and the public trust, when it used the grand jury to accomplish precisely the arbitrary and oppressive enforcement that the Grand Jury Clause was designed to protect against.

In so doing, the government prevented the grand jury entirely from performing its critical interventionist duty. This is "a situation in which the conduct of law enforcement agents" here, federal prosecutors "is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431 32 (1973). In this instance, it is not only due process considerations but also Fifth Amendment grand jury principles; and Sixth Amendment venue, effective counsel, and speedy trial rights that compel such a bar to conviction. This type of prosecutorial manipulation of the grand jury process is "so outrageous" that the government must be barred "from invoking judicial processes to obtain a conviction." *Id*. The indictment must be dismissed as a result of the "constitutional

---

[5] Court rules regarding sealing are carefully tailored so as not to infringe on the public's First Amendment right to know what is done in their public court system. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). It is hard to envision how the government's sealing the third superseding indictment for a month, solely to create venue and to further its forum-shopping aims, all while the defendants were in custody, outweighed the public's right to access the indictment much less the defendant's Fifth and Sixth Amendment rights.

deprivation" that amounted to a "structural defect affecting the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). "Without these basic protections" here, of a neutral grand jury that is a bulwark against, rather than an arm of, oppressive and arbitrary government tactics a subsequent "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id*. (citing *Rose v. Clark*, 478 U.S. 570, 577-78 (1986.[6]

**II. The government's unconstitutional manipulation of the grand jury to further its forum-shopping aims resulted in a deficient probable cause finding and a count that fails to state an offense because it alleges future predictions that cannot be determined by an up-or-down finding of guilt.**

The grand jury cannot possibly make a probable cause finding as to venue by the government's telling the grand jury at a proceeding where no adversarial party is present about what it plans to do with respect to the defendants. The probable cause finding is itself deficient: it

---

[6] The misuse of judicial proceedings or orders as a ruse also severely prejudiced the defendants' substantive and procedural rights. The delay of 33 days in revealing the new charge untethered to the conspiracy is both presumptively and actually prejudicial to the defense in its effect on trial preparation, litigation planning and budgeting decisions, representation decisions, and the handling of case investigation and motion practice. Significantly, the length of the delay equals half of the statutory speedy trial time of 70 days. *See* 18 U.S.C. § 3161(c)(1); *see also* § 3161(b) (30-day time limit for filing of indictment). In this case particularly, the government was on express notice that the defense could not begin fully preparing the case until the anticipated, and already-delayed, filing of a superseding indictment as notice of the charges was essential to finalizing representation issues and addressing carefully planned counsel schedules for motions which had already been delayed until now the beginning of summer. The delay has caused the careful use of resources and expert hiring decisions to be disrupted and has resulted in premature defense motion practice as to already-filed motions filed blindly as to the totality of felony accusations. The redirection of defense resources needed now has been hampered, including in starting a new investigation in relation to the Bahamas and Miami. This prejudice is notable given that the prosecution at issue involves the lengthiest delay of any cruise ship rape case ever federally prosecuted (13 years), making every day of investigation lost and every bit of resources diverted from it troubling and more costly, particularly where expensive investigation costs have already been diverted to what the defense was led to believe were the actual charges.

15

predicts future behavior *by the government with respect to the people whom the government seeks to indict*. This is an improper matter for grand jury determination.

One result of this unprecedented abuse of the grand jury process is the indictment's failure to state an offense as to Count 10. Under Rule 12(b)(3)(B), the district court may hear a motion to dismiss alleging that the indictment fails to comply with relevant pleading requirements in alleging an offense. *See* Fed. R. Crim. P. 12(b)(3)(B) (motions asserting the following indictment defects "must be raised by pretrial motion" include "(v) failure to state an offense"). The interrelatedness of these requirements arises from Fed. R. Crim. P. 7(c)(1), which provides that the indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." *See United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (noting that this requirement performs three constitutionally required functions — the Sixth Amendment right to be informed of the nature and cause of the accusation; the double jeopardy bar mandated by the Fifth Amendment; and the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury).

At trial, the government bears the burden of proving venue by a preponderance of the evidence. *United States v. Smith*, 198 F.3d 377, 382 (2d Cir. 1999). Though this standard is not reasonable doubt, it is also not toothless. And this is a rare case where the differences between the two standards matter not — because the Third Superseding Indictment charges a future prediction for which a determination of factual proof is impossible. Future predictions are by nature probabilistic: they cannot be proven true or false and thus cannot be submitted to a jury for a finding of guilty or not guilty. The offense thus fails to state an offense and must be dismissed on that basis.

**III. Defendants further request discovery and a hearing to determine the extent of these constitutional violations.**

For the reasons outlined in this motion, defendants request an evidentiary hearing. They also request any and all discovery related to the improper use of the grand jury to manipulate venue and to return an indictment they never intended to prosecute. The request for discovery includes:

(1) A copy of the order sealing the third superseding indictment;

(2) A copy of any and all ex parte communications between the government and the court;

(3) any and all internal communications related to the decision to use the grand jury in this unprecedented manner;

(4) any and all documents, records and other materials in the government's possession related to the alleged victim charged in count 10;

(5) grand jury minutes.

In connection with the evidentiary hearing, the Court should order production of grand jury proceedings concerning the predictive law enforcement action on which Count 10 was premised. The Court has discretion pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i) to make grand jury materials covered by Rule 6(e) available to the parties for inspection, copying, and use in this proceeding. Specifically, the materials sought are the non-testimonial or testimonial proceedings that pertain to the use of the grand jury to separate the sealed from the unsealed indictment and the extent to which the grand jury was made part of the government endeavor to create venue prospectively. Disclosure will help to insure preservation of the defendant's Fifth Amendment grand jury rights, will address remaining questions concerning venue abuse in the grand jury proceedings, and will explain how the indicting grand jury understood its role and obligations. The defendant has a compelling and

particularized need justifying an exception under Rule 6(e)(3)(E)(i). Production of the grand jury minutes on the referenced matters is essential to preservation of the defendant's Fifth Amendment grand jury and Sixth Amendment fair trial rights.

Alternatively, if deemed necessary by the Court, review of the materials in camera would serve the interest of justice. The defendant has a compelling and particularized need justifying an exception under Rule 6(e)(3)(E)(i). Production of the grand jury minutes on the referenced matters is essential to preservation of the defendant's Fifth Amendment rights.

The general rule of secrecy of grand jury proceedings is codified in Rule 6(e) of the Federal Rules of Criminal Procedure. However, the Rule enumerates specific circumstances in which disclosure of grand jury materials by a district court is permissible. As is relevant here, "the court may authorize disclosure at a time, in a manner, and subject to any other conditions that it directs of a grand jury matter . . . preliminarily to or in connection with a judicial proceeding ... ." Fed. R. Crim. P. 6(e)(3)(E)(i). The "judicial proceedings" exception set forth in the Rule includes criminal "judicial proceedings," such as the instant matter, *see, e.g.*, *In Re Miami Fed. Grand Jury No. 79-8*, 478 F. Supp. 490, 493 (S.D. Fla. 1979), and contemplates disclosure of grand jury materials for uses that are "related fairly directly to some identifiable litigation, pending or anticipated." *United States v. Baggot*, 463 U.S. 476, 480 (1983). A party invoking an exception under Rule 6(e) must set forth a "compelling and particularized need." *United States v. Davis*, 721 F. App'x 856, 860 (11th Cir. 2018). The compelling need in this case to purge the taint of involvement of the grand jury in the active prospective manipulation of venue readily meets the applicable test for disclosure.

Disclosure is appropriate when "'circumstances [have] created certain difficulties peculiar

to this case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process.'" *United States v. Aisenberg*, 358 F.3d 1327, 1348 49 (11th Cir. 2004) (quoting *United States v. Elliott*, 849 F.2d 554, 567 n.15 (11th Cir. 1988)).

As additional and alternative requests, defendants ask this Court to dismiss Count 10 or transfer the trial on Count 10 to the Southern District of Florida, where defendants were first arrested.

## Conclusion

For the foregoing reasons, defendants request dismissal of the indictment against them.

Respectfully submitted,

| | |
|---|---|
| BLACK SREBNICK | KLUGH WILSON LLC |
| 201 South Biscayne Boulevard, Suite 1300 | 40 NW Third St., PH 1 |
| Miami, Florida 33131 | Miami, Florida 33128 |
| (305) 371-6421 | (305) 536-1191 |
| | |
| /s/ Howard Srebnick | /s/ Richard C. Klugh |
| HOWARD SREBNICK | RICHARD C. KLUGH |
| Florida Bar No. 919063 | Fla. Bar No. 305294 |
| HSrebnick@RoyBlack.com | E-mail: rklugh@klughlaw.com |
| *Counsel for Alon Alexander* | *Counsel for Oren Alexander* |