**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37ᵗʰ Floor*
*New York, New York 10278*

November 18, 2025

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:    ***United States v. Alon Alexander, Oren Alexander, and Tal Alexander,*** **S3 24 Cr. 676 (VEC)**

Dear Judge Caproni:

The Government respectfully supplements its motion *in limine* to preclude certain expert testimony by Dr. Deryn Strange.  On November 5, 2025, the Government moved, under Federal Rules of Evidence 401, 403, and 702, to preclude the defense from eliciting certain opinion testimony from Dr. Strange.  (Dkt. 188).  On November 6, 2025, defense counsel provided the Government with a supplemental expert disclosure for Dr. Strange, which is attached hereto as Exhibit A.  According to that supplemental disclosure, the defendants intend to elicit expert opinion testimony from Dr. Strange on several additional hypothetical sources for false memory formation, specifically certain types of therapy and dreams and nightmares.  The Government objects to this testimony, as it is unreliable, does not fit the facts of the case, and usurps the role of the jury by improperly opining on witness credibility.

> **A.    Defense Supplemental Expert Disclosure**

The defense seeks to offer expert opinions of Dr. Strange on "an additional potential source of suggestive influence: Therapy and a Therapist's Beliefs." (Ex. A at 1).  Specifically, the defense seeks to offer testimony from Dr. Strange regarding the following purportedly suggestive sources:

1.    Therapist's beliefs (*see* Ex. A at 1-2);

2.    Internal Family Systems ("IFS") Therapy (*see* Ex. A at 2);

3.    EMDR and BLS Therapy (*see* Ex. A at 2);

4.    Group Therapy (*see* Ex. A at 3);

5.    Guided Imagery/Visualization and Journaling/Writing (*see* Ex. A at 3);

6.    Prolonged Exposure Therapy (*see* Ex. A at 3); and

7.      Dreams and Nightmares (*see* Ex. A at 3-4).

**B.      Discussion**

For the reasons below, the opinions contained in Dr. Strange's supplemental expert disclosure should be precluded because they are unreliable and lack fit with this case; such opinions would be used merely as vehicles to insert a speculative factual narrative about the case, and thus are irrelevant, unhelpful, and confusing to the jury. And to the extent that Dr. Strange intends to use such opinions to speculate that certain victims may in fact have developed false memories through such "suggestive influences," such testimony assessing victim credibility would invade the province of the jury and should be precluded.

Even an initial review of the research upon which Dr. Strange's opinions are based demonstrates that these opinions are unreliable. Dr. Strange is willing to stretch her opinions beyond what is supported by the science in this area and cherry picks the research upon which she relies, ignoring anything that contradicts the point she wishes to make. Throughout her notices, Dr. Strange presents her opinions in definitive terms, creating the impression that they are generally accepted views among researchers who study memory. That is far from the truth. Because of the inherent limitations on studying the accuracy of individual's autobiographical memories outside of a laboratory setting, the studies upon which Dr. Strange relies involve researchers deliberately providing participants with false information in order to implant false memories. Setting aside the fact that such studies do not accurately mimic real life, some researchers have found that "the events featuring in these cases by no means always support the original account that primarily identifies therapists as actively setting out to suggest or implant false memories of abuse." Chris R. Brewin and Bernice Andrews, *False Memories of Childhood Abuse*, British Psychological Society, June 7, 2019 (available at https://www.bps.org.uk/psychologist/false-memories-childhood-abuse). Many of these false memory studies involve participants instructed to provide accounts of a false event and encouraged to recall the details of the false event over several sessions. In some cases, participants are even given doctored photographs of the false event. In the majority, participants are guided to imagine the false event as if they had actually happened. *See id.* Meaning, researchers go to great lengths to deliberately implant false memories into study participants by lying to them, directing them to repeatedly recall the lie, and sometimes even presenting them with doctored evidence. And even then, typically only a minority of participants develop a false memory of the event. *See See* Amanda J. Barnier, et al., *A Conceptual and Empirical Framework for the Social Distribution of Cognition: The Case of Memory*, Cognitive Systems Research March 2008 at 15 (approximately 30% of participants included a false memory that was suggested by the researcher); Alan Scoboria et al., *A Mega-Analysis of Memory Reports from Eight Peer-Reviewed False Memory Implantation Studies*, Memory 2017 at 25-27 (the false memory rate was between approximately 19% to approximately 46.1 % when all three misinformation techniques were used.). Accordingly, Dr. Strange's opinion that false memories can be easily implanted through therapy, reviewing social media, or the news, is simply not a reliable position given the research in this area. "Rather than childhood memories being easy to implant, . . . a more reasonable conclusion is that they can be implanted in a minority of people given sufficient effort." Brewin & Andrews 2019.

To use a particular example from the supplemental notice, if permitted, Dr. Strange will opine at trial that "[r]esearchers have serious concerns" with the therapeutic methods EMDR and

Case 1:24-cr-00676-VEC    Document 195    Filed 11/18/25    Page 3 of 6

Page 3

BLS and that researchers "stress that false memory creation should be monitored during inventions based on eye movements." This conclusion is unreliable for several reasons. *First*, even a cursory review of the relevant research reveals notable holes in Dr. Strange's opinion on this score. Indeed, just one year after Sanne Houben et al. published the article upon which Dr. Strange relies for this proposition (*see* Sanne Houben et al., *Lateral Eye Movements Increase False Memory Rates*, Clinical Psychological Science, 2018, Vo. 6(4) 610-616), other researchers attempted to replicate Houben's study and were unable to do so, instead reaching the opposite conclusion. *See* Kevin van Schie and Arne Leer, *Lateral Eye Movements Do Not Increase False-Memory Rates: A Failed Direct-Replication Study*, Clinical Psychological Science, 2019. While this is of course a point that the Government can raise on cross-examination, the Court should not forsake its gatekeeping function in determining whether Dr. Strange's opinion is indeed reliable in the first instance. *Second*, while Dr. Strange cites one article for the proposition that "international courts have ruled that EDMR was responsible for the creation of false memories" (Ex. A at 3), Dr. Strange's conclusion is at best a gross exaggeration of what the literature supports. The paper she cites contains an analysis of a *single* case in an Italian court, where a therapist was subsequently charged for the harm caused by his methods of treating a particular minor in videotaped therapy sessions, during which the therapist strongly suggested to the minor repeatedly that she had been sexually abused as a child. *See* Henry Otaar et al., *A Court Ruled Case On Therapy-Induced False Memories*, Journal of Forensic Sciences, 2022, 67: 2122-2129. As a result, neither the Court nor the jury can rely on Dr. Strange's opinions with confidence.

Dr. Strange's opinions also do not comport with the facts of this case and should be precluded. As an initial matter, the Government is not currently aware of any of its witnesses who have undergone suggestive therapy involving IFS, group therapy, therapy techniques involving guided imagery/visualization and journaling/writing, EMDR or BLS, or who have been influenced through dreams or nightmares. Indeed, much of the research on which Dr. Strange relies for her opinions that therapy can suggest false memories is premised on a scenario that involves a person beginning therapy without any idea that they may have been abused, the therapist then suggesting that the person's problems are likely caused by repressed memories of childhood sexual abuse, and the therapist then actively encouraging the person to recover these repressed memories through techniques like guided imagery and visualization. *See* Scoboria 2017. Such an approach to therapy would be outside of the standard of care on treatment of individuals who suffered abuse.[1] *See*

---

[1] The American Psychological Association ("APA") is the main professional organization for researchers, educators, clinicians, consultants, and students in the field of psychology in the United States. The APA issues practice guidelines laying out best practices and standards of care in different areas of treatment and has issued a position statement on therapies focused on memories of childhood abuse that emphasizes the importance of therapists taking a neutral approach and avoiding prejudging whether abuse had occurred or confirming or denying the truth of recovered memories. *See* American Psychological Association Position Statement on Therapies Focused on Memories of Childhood Physical and Sexual Abuse, 2000, reaffirmed 2013, available at https://www.psychiatry.org/getattachment/930fb215-2147-40e9-9d44-f06d84fc64de/Position-2013-Memories-Child-Abuse.pdf (last accessed Nov. 17, 2025). The APA's website also notes that a competent therapist addressing memories of childhood sexual abuse will attempt to stick to the facts as the patient reports them, and "will be careful to let the information evolve as your

Christine Courtois, *Guidelines for the Treatment of Adults Abused or Possibly Abused as Children*, American Journal of Psychotherapy, Vol. 51, No. 4, Fall 1997, 497-510 at 502-503 ("The practitioner must monitor personal and professional assumptions and biases and avoid leading questions, specific suggestions, premature closure of explorations, and/or the ready acceptance of the individual's recollections as historical truth. . . . It is advisable to adopt a neutral therapeutic stance to the possibility of abuse, to ask open rather than closed or suggestive questions, and to encourage exploration and the cross referencing of information without drawing premature conclusions."); *id.* at 503 ("No one symptom or set of symptoms (either initially or long term) is pathognomonic of childhood sexual abuse, so the practitioner should not automatically and conclusively assume an abuse history due to particular symptoms, especially when no memory of abuse is available."). There is simply no basis to think that any of the victims in this case had the misfortune to choose a problematic therapist who implanted false memories of horrific sexual assault. And in order for the Government to refute this baseless claim, it would have to elicit extensive testimony that infringes on the psychotherapist-patient privilege.[2] Allowing such invasive inquiry into victims' therapy and mental health treatment could force a victim to unwillingly waive psychotherapist/patient privilege and subject them to a painful, embarrassing, and farfetched cross examination that is unlikely to provide a basis for Dr. Strange's opinion regardless. Consequently, any expert testimony on these topics would simply introduce a narrative untethered from the facts of the case and invite the jury to engage in mere speculation. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *see also LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 642 (S.D.N.Y. 2016) (expert opinion inadmissible where it is "a mismatch for the facts" of the case); *see also United States v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.), Dkt. 516 at 15-16 (rejecting memory expert testimony that suggested activities occurred in the current case); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009); *United States v. Paduch*, No. 23 Cr. 181 (RA) (S.D.N.Y.) (May 6, 2024, Tr. 1256-1257).

As to Dr. Strange's opinion that guided imagery/visualization and journaling/writing or prolonged exposure therapy may be a source of suggestive influence, the studies cited for this proposition are premised on research participants being first fed a false event and then later asked to imagine or visualize that false event, which then increased the likelihood of the implantation of a false memory pertaining to the event. *See e.g.* Fiona Gabbert et al., *Memory Conformity: Can Eyewitnesses Influence Each Other's Memories for an Event?*, Applied Cognitive Psychology, 17: 533-543, 2003 at 27; Stefanie J. Sharman and Alan Scoboria, *Imagination Equally Influences False Memories of High and Low Plausibility Events*, Applied Cognitive Psychology, September

---

memory does and not to steer you toward a particular conclusion or interpretation." American Psychological Association, Memories of Childhood Abuse, available at https://www.apa.org/topics/trauma/memories (last accessed Nov. 17, 2025).

[2] Allowing the defendants to force such questioning of victims would be in tension with their request to preclude any evidence of diagnoses such as PTSD or the long-term effects of the sexual assaults on each victim. (*See* Dkt. 174 at 32-41). Indeed, that the defendants are seeking to preclude the only possible source of a factual basis for Dr. Strange's testimony demonstrates that they are, in fact, trying to introduce a purely speculative narrative that would confuse the jury.

2008 at 3; Phillip Herndon et al., *False Memories for Highly Aversive Early Childhood Events: Effects of Guided Imagery and Group Influence*, Psychology of Consciousness: Theory, Research, and Practice, 2014, Vol 1, No. 1, 20-31.[3] ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ That evidence eliminates, or at the very least highly mitigates, any potential factual basis for Dr. Strange to introduce any testimony regarding prolonged exposure therapy as a suggestive source of false memories. Here, there is simply no evidence that any of the victim witnesses were ever fed false details of sexual abuse by a therapist then invited to imagine or visualize what that abuse could have looked like or that they underwent prolonged exposure therapy premised on false suggestions of sexual assault. Consequently, any such expert testimony would similarly invite baseless speculation and risk confusing the jury.

Finally, to the extent that Dr. Strange's testimony is found to be reliable and to "fit" with the facts of this case, it should be precluded because it seeks to opine on the victims' credibility. The defendants' supplemental notice reveals that Dr. Strange has been provided 3500 material for all potentially testifying victims, which suggests that she has conformed her anticipated testimony to undermine witness credibility. There are two types of testimony on these subjects that an expert can provide: subject matter testimony and individual assessment testimony. These two forms of expert testimony serve distinct functions. While the latter may be used to evaluate a complainant in a civil matter, it is strictly prohibited in the criminal context. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("Expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible."). Indeed, a blind expert's "testimony is appropriate because she does *not* testify as to any specific witness's credibility." *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2021 WL 5283951, at *5 (S.D.N.Y. Nov. 11, 2021) (emphasis in original); *see also United States v. Torres*, No. 20 Cr. 608 (DLC), 2021 WL 1947503, at *7 (S.D.N.Y. May 13, 2021), *aff'd*, No. 21-2665-CR, 2023 WL 378942 (2d Cir. Jan. 25, 2023); *United States v. Johnson*, 860 F.3d 1133, 1140 (8th Cir. 2017) (explaining that an expert may testify "regarding the general characteristics that sexually abused children exhibit" but may not usurp the jury's role of assessing the credibility of any specific victim); *United States v. Telles*, 6 F.4th 1086, 1097-98 (9th Cir. 2021) (same). Here, as an expert merely providing guidance on the impact of suggestive influences on memory, there is no reason for Dr. Strange to review this victim-specific information. To the contrary, the only

---

[3] Like Herndon et al., several of the articles that Dr. Strange relies upon for her opinions on these types of therapies are focused on recovering "repressed" memories of childhood sexual abuse—meaning sexual abuse suffered as a young, often prepubescent, child then forgotten—or forgotten early childhood memories. *See e.g.* Lindsay et al., *True Photographs and False Memories*, Psychological Science, 2004, Vol. 15, No. 3; Hyman and Pentland, *The Role of Mental Imagery in the Creation of False Childhood Memories*, Journal of Memory and Language, 1995. None of the victims in this case will be testifying about sexual abuse suffered as prepubescent children nor will they testify that memories of their attacks at the hands of the defendants were "repressed" and later recovered. Consequently, these bases for Dr. Strange's opinions have no relevance to this case, and any testimony based on such studies should be precluded.

reason to share this information with Dr. Strange is so that she can tailor her testimony to discredit these particular victims. This is improper and her testimony should be precluded.

Accordingly, the Court should preclude Dr. Strange's proffered opinions regarding potential sources of suggestive influence because those opinions have no application to the case here, are based on totally insufficient "facts or data" within the meaning of Rule 702, and because they seek to improperly opine on the victims' credibility.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s_____
    Kaiya Arroyo
    Elizabeth A. Espinosa
    Andrew W. Jones
    Madison Reddick Smyser
    Assistant United States Attorneys
    (212) 637-2226/-2216/-2249/-2381