| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------- X<br>    UNITED STATES OF AMERICA<br>              -against-<br>    ALON ALEXANDER, OREN ALEXANDER, and<br>    TAL ALEXANDER,<br>                                    Defendants.<br>------------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED:  1/12/2026<br><br>24-CR-676 (VEC)<br><br>MEMORANDUM<br>OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

Count One of the S4 Superseding Indictment charges Defendants Alon, Oren, and Tal Alexander with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c). *See* S4 Superseding Indictment, Dkt. 207 ("Indictment") ¶ 7.[1] In the context of opposing the Government's motion *in limine* to preclude evidence of Defendants' personal characteristics that are not relevant to any pertinent trait, Defendant Alon Alexander ("Defendant") argued that he should be permitted to introduce evidence of his March 2019 engagement to be married, stating that the engagement constituted withdrawal from the sex trafficking conspiracy and, therefore, evidence of the engagement and marriage are admissible. *See* Tr. of Nov. 24, 2025, Dkt. 245, at 85:2–89:3. Upon the Court's direction to brief the withdrawal issue, Defendant saw an opportunity to reach for the prize and used his supplemental submissions to move for acquittal or, alternatively, for a directed verdict as to Count One.

Alon Alexander's motion for acquittal is DENIED. The Government's motion to preclude evidence of his engagement and marriage is GRANTED.

---

[1] On January 8, 2026, a grand jury returned a fifth superseding indictment. *See* Dkt. 292-1 (under seal).

BACKGROUND

Defendant first raised his withdrawal argument in Defendants' responsive briefing to the Government's motions *in limine*. *See* Dkt. 201 at 101–02. At a hearing on November 24, 2025, in the context of exploring whether the Government's motion *in limine* should be granted as to evidence of Alon Alexander's engagement, the Court requested additional briefing from Defendant "setting forth his legal argument regarding whether/how Alon Alexander's marriage constitutes withdrawal from the alleged conspiracy." Dkt. 210. In the submission that followed, Defendant argued that his March 2019 engagement — and Defendant's purportedly simultaneous public pronouncements of his intention to maintain a monogamous lifestyle, of which his brothers were aware — constituted "affirmative and overt steps inconsistent with the objectives of the alleged conspiracy," thus effectively withdrawing him from the alleged conspiracy. *See* Def. Br., Dkt. 226, at 1. Because the original indictment in this case was returned on December 6, 2024, and because 18 U.S.C. § 1594(c) carries a five-year statute of limitations, Defendant asserted that he should be acquitted on Count One, as the charges against him are time barred and thus fail as a matter of law. *See id*. In the alternative, Defendant pressed that, "[a]t a minimum," the Court should deny the Government's motion *in limine* as to evidence of Defendant's engagement and charge the jury on his statute of limitations defense. *Id*. at 5.

The Government argued that Defendant "failed to meet his burden of demonstrating withdrawal from the conspiracy," as much of the evidence that Defendant would submit to prove his withdrawal is inadmissible, and, even if it were not, "his engagement announcement and subsequent marriage are not synonymous with leading a law-abiding, or even monogamous life." *See* Gov't Br., Dkt. 240, at 1–3. The Government further argued that Defendant's marital status

2

is "irrelevant to the charged conspiracy," as an engagement announcement "certainly does not prove cessation of his participation in an illegal sex trafficking conspiracy," nor does it demonstrate that he "intended to stop assisting his brothers from their activities with women." *Id.* at 2.

At the Court's request, *see* Dkt. 252, on December 19, 2025, Defendant submitted for *in camera* review various photos, social media posts, and home videos (with accompanying transcripts) of the engagement announcement and other statements that Defendant alleges constitute evidence of his withdrawal from the conspiracy. The Government responded, arguing that nearly all the additional evidence provided by Defendant in support of his withdrawal theory is hearsay and therefore inadmissible. Gov't Suppl. Br. (under seal). The Government also contended that Defendant's proffered evidence falls well short of defense counsel's prior representations to the Court that the substance of Defendant's announcements of his engagement demonstrated an unambiguous expression of withdrawal from the conspiracy.[2] *Id.*

## LEGAL STANDARD

The law on withdrawal from a conspiracy is clear. "[W]here the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the co[-]conspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." *United States v. Flaherty*, 295 F.3d 182, 192 (2d Cir. 2002). "[M]ere cessation of conspiratorial activity is not sufficient to constitute withdrawal from a conspiracy." *United States v. Leslie*, 658 F.3d

---

[2] Indeed, contrary to defense counsel's oral representations, the Court's *in camera* review of the evidence Defendant has submitted confirms that he never told his brothers, in words or substance, that "I'm out [of the conspiracy]," nor did he tell "the world [that he was] not engaging in any more sexual activity with anyone else on the planet Earth. If you want to party, you pay for it yourself. You pay for the after parties. You pay for the drinks." *See* Tr. of Nov. 24, 2025, at 88:14–18.

140, 144–45 (2d Cir. 2011). Withdrawal is an affirmative defense and the defendant making a withdrawal argument must demonstrate that he took "some definite, decisive, and affirmative action to disavow himself from the conspiracy or to defeat the goal or purpose of the conspiracy." *United States v. Jones*, 27 F.3d 50, 51 (2d Cir. 1994). Withdrawal can be effectuated in two ways: either by "the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *Leslie*, 658 F.3d at 143 (quoting *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008)). When adequately executed, withdrawal from a conspiracy will trigger the relevant statute of limitations. *See Smith v. United States*, 568 U.S. 106, 111–12 (2013).

## DISCUSSION

Defendant argues that his March 2019 public announcement of his engagement to be married constitutes "communication of the abandonment" of the alleged sex trafficking conspiracy that was "reasonably calculated to reach [his] co-conspirators" — *i.e.*, his brothers. *See Leslie*, 658 F.3d at 143 (quoting *Eppolito*, 543 F.3d at 49). His theory fails for several reasons.

First, all the evidence that Defendant has proffered in support of his withdrawal argument is inadmissible hearsay. *See* Fed. R. Evid. 802. Three of Defendant's ten additional evidentiary submissions consist of his own prior statements regarding his engagement and marriage. The remainder include similar statements from others (*e.g.*, his co-defendants and a rabbi). But regardless of speaker, each statement was uttered out of court and would only be admitted to prove the truth of the matter it asserts. The evidence is, therefore, hearsay and not admissible. *Id*. To the extent Defendant would seek to admit some of his own statements pursuant to Rule 803(3) as "[a] statement of [Defendant's] then-existing state of mind," the evidence would still

4

be inadmissible. Defendant's own statements about his engagement and excitement about getting wed would be admissible to prove only that, when spoken, Defendant had the current intent *to get married*. That fact, standing alone, is irrelevant. Despite counsel's arguments, none of the proffered statements constitute a proclamation of Alon's then-current intent to remain monogamous during his engagement and marriage, let alone constitute a clear communication to his co-conspirators that he intended at that time *to cease participating* (sexually or otherwise) in the alleged sex trafficking conspiracy.

Second, even if the Court were to accept that Defendant's out of court statements about his engagement could be interpreted to reflect an unambiguous commitment to remain monogamous and abandon the "single life," *see* Def. Br. at 2, the statements nonetheless fail to constitute adequate communication of his *withdrawal* from the conspiracy because sexual participation is *not a requirement* of the alleged conspiracy.[3] As the Government rightly notes, "[b]eing unfaithful to one's partner is not a crime, and Alon's faithfulness, or lack thereof, is not why he is on trial." Gov't Br. at 2. Instead, it is the Government's contention that, beyond "his own personal practice of drugging and raping women," Defendant assisted his co-conspirators in doing the same. *Id.* Thus, even if it could be said that Defendant's proffered statements indicate

---

[3] Defendant's counsel has previously argued that Alon Alexander was "part of a social construct that did not constitute a crime" known as "'the single life.'" Tr. of Nov. 24, 2025, at 87:4–6. It is Defendant's contention that "[h]e withdrew from the single life," which "constitutes a total abandonment of any of the conduct, whether consensual or not, that was part of the claim the [G]overnment makes. Because consent is the [G]overnment's issue. [It is] not illegal to have sex, full stop. It is illegal to have non-consensual sex." *Id.* at 87:9–13.

Defendant's argument fails to adequately grapple with the nuance of the Government's allegations or the contours of a sex trafficking conspiracy more generally. Participation in the alleged criminal conspiracy is not comparable or akin to participation in "the single life," however one may normally understand that phrase. There are plenty of single men who engage in sexual activity without trafficking, drugging, or raping women and girls. By the same token, the inverse of the Government's alleged conspiracy is not, for example, "the engaged life" or "the married life." Thus, there is nothing about the mere transition from "single" to "engaged" that clearly indicates that Defendant withdrew himself from the conspiracy, or that he would cease helping his brothers accomplish the goals of the conspiracy — even if his participation in the scheme no longer involved him having sex (consensual or otherwise) with women that were not his fiancée.

5

his intent that "he himself [would] be monogamous," it is an extraordinary (and unsupported) leap to infer from his pre-marital statements that "he also intended to stop assisting his brothers [with] their activities with women." *Id.* At bottom, to withdraw from the alleged conspiracy, Defendant is required to have *clearly* communicated to his co-conspirators that he no longer intended to take steps to *facilitate* the conspiracy — *e.g.*, to procure and transport women (whether for himself or his co-conspirators), to help finance the sex trafficking operation, or to obtain and supply drugs to facilitate the ends of the conspiracy. None of Defendant's proffered evidence regarding his engagement comes close to suggesting as much.

Defendant primarily relies on *United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988), and *United States v. Goldberg*, 401 F.2d 644 (2d Cir. 1968), to support his withdrawal theory. Both cases are inapt and easily distinguishable. *Nerlinger*, for example, involved a defendant who communicated his withdrawal from a fraud scheme by closing the account that was necessary to effectuate the scheme, thus relinquishing his claim to any profits, and resigning from the company altogether, effectively disabling himself from any ability to participate further in the conspiracy. *Id.* at 974–75. In *Goldberg*, too, the defendant withdrew from the conspiracy by terminating his employment at the corporation that was integral to effectuating the underlying criminal scheme. 401 F.2d at 648–49. In both cases, adequate withdrawal was predicated on actions taken by the conspirator that made his continued participation in the scheme a virtual impossibility (due to the utter lack of access to the tools, platforms, employers, and other resources central to the conspiracy and necessary to facilitate its operation). Not so here. Neither Defendant's engagement in 2019, nor his public pronouncements related thereto, did anything to prevent Defendant from engaging in commercial sex acts, nor from assisting his brothers to engage in commercial sex acts. Although there are moral and social reasons why

6

Defendant might have chosen to refrain from *some* of the conspiratorial activities following his engagement, any such principles, without evidence of clear communication to his co-conspirators that he would refrain henceforth from *all* such activities, are far too amorphous and abstract to serve as the basis of Defendant's theory of withdrawal.

Because Defendant has not proffered evidence adequate to support the notion that his engagement constitutes proof of withdrawal, the Government's motion *in limine* to preclude evidence of personal characteristics that are not relevant to any pertinent trait, *see* Dkt. 188, at 83–84, is granted. Alon Alexander cannot introduce evidence of his engagement or marriage because such evidence is simply irrelevant to this case.[4]

## CONCLUSION

For the foregoing reasons, Defendant's motion for acquittal as to Count One is DENIED. The Government's motion *in limine* to bar introduction of Defendants' personal characteristics that are not pertinent, specifically including evidence of Alon Alexander's engagement and marriage, is GRANTED.

If either the Government or Defendant(s) believe that the briefing and evidentiary submissions made in support or opposition of Defendant's acquittal motion should remain under

---

[4] Whether it would be appropriate to charge the jury on Defendant's withdrawal from the conspiracy remains to be seen. While the proffered evidence does not demonstrate a clear communication of withdrawal sufficient to support Defendant's theory such that he is entitled to a judgment of acquittal, it is conceivable that evidence may be introduced that tends to show that Alon Alexander clearly communicated his withdrawal from the alleged conspiracy to his co-conspirators at some point in time. If that were to happen, the Court will revisit Defendant's request for an appropriate jury charge.

seal, the parties must SHOW CAUSE why continued sealing is warranted not later than **Friday, January 23, 2026**.

SO ORDERED.

Date:  January 12, 2026  
       New York, NY

                                          VALERIE CAPRONI  
                                          United States District Judge