```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/15/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA                                       :
                                                               :
                -against-                                      :   24-CR-676 (VEC)
                                                               :
ALON ALEXANDER, OREN ALEXANDER, and                            :   MEMORANDUM
TAL ALEXANDER,                                                 :   OPINION & ORDER
                                                               :
                                Defendants.                    :
                                                               :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

On or about December 3, 2025, with the Court's authorization, counsel for Defendants served subpoenas *duces tecum* (pursuant to Federal Rule of Criminal Procedure 17(c)) on three of the alleged victims in this case: Victim 1, Victim 2, and Victim 6. Each of these subpoenas (the "Instagram Subpoenas") is substantially the same, seeking vast swaths of content and data associated with each respective victims' Instagram account. *See* Dkts. 294-1 (Victim 1), 301-1 (Victim 2), 317-1 (Victim 6). The Instagram Subpoenas included a return date of January 5, 2026 – *i.e.*, the date on which the trial in this case was, at the time of service of the subpoena, set to commence. *See id.*

On December 19, 2025, counsel for Defendants served additional subpoenas (the "Communication Subpoenas") on Victim 1 and Victim 2, respectively. *See* Dkts. 294-2 (Victim 1), 301-2 (Victim 2). Although not quite as cut-and-paste as the Instagram Subpoenas, each of the Communication Subpoenas requests similar categories of information from each victim – namely, communications between the respective victim and various of her friends "regarding" Defendants and/or the trips to the Hamptons during which the Government alleges that each

victim was assaulted.[1]  The Communication Subpoenas each included a return date of January 20, 2026 – *i.e.*, the adjourned start date for the trial, *see* Dkt. 291.

On January 2, 2026, Victim 1 moved to quash both of Defendants' subpoenas, arguing that many of the requests are irrelevant to the case or otherwise constitute an overbroad fishing expedition not permitted by Rule 17(c).  *See* Victim 1 Br., Dkt. 285-1.  Defendants opposed Victim 1's motion to quash on January 8, 2026.  *See* Def. Opp., Dkt. 294.  On January 9, 2026, Victim 2 moved to quash the subpoenas, largely on the same bases articulated by Victim 1 in her motion.  *See* Victim 2 Br., Dkt. 301.  Finally, on January 12, 2026, and for the same reasons articulated by Victim 1 and Victim 2, Victim 6 moved to partially quash the lone subpoena issued to her.[2]  *See* Victim 6 Br., Dkt. 317.  The Court generally agrees with the victims.  Each of the Instagram Subpoenas is QUASHED.  The Communication Subpoena served on Victim 1 is QUASHED.  The Communication Subpoena served on Victim 2 is QUASHED in part and UPHELD in part.

Rule 17(c)(1) authorizes service of subpoenas for "any books, papers, documents, data, or other objects" to be produced in court "before trial or before they are to be offered in evidence."  Fed. R. Crim. P. 17(c)(1).  Rule 17(c) is not intended to be a tool for discovery, which is governed generally by Rule 16.  Instead, Rule 17(c) "should be used only as 'a mechanism for obtaining specific admissible evidence.'"  *United States v. Skelos*, No. 15-CR-317 (KMW), 2018

---

[1]    Some of the requests in the latter subpoena served on Victim 1 are slightly different or more nuanced.  For example, Request #1 in Victim 1's Communication Subpoena demands "[t]he Gmail-native version of a full email chain between" Victim 1 and a friend "sent in June 2011, which was produced to the Government in November."  Dkt. 294-2.  Request #8 demands "[a]ll communications between" Victim 1 and a friend, "including any posts on social media platforms such as Facebook and Instagram that were liked or commented on by [Victim 1's friend], between July 24, 2024, and the date of th[e] subpoena."  *Id.*  Request #9 demands "[m]etadata associated with three photographs produced by [Victim 1] to the Government" on November 18, 2024.  *Id.*

[2]    Because Victim 6 alleges that "she does not have [] responsive information in her possession, custody, or control," as to various of the requests in Defendants' Instagram Subpoena, her motion to quash implicates only two of the subpoena's four requests.

WL 2254538, at *2 (S.D.N.Y. 2018) (quoting *United States v. Barnes*, No. 04-CR-186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008)). Rule 17(c)(2) authorizes the Court to quash subpoenas "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Upon a motion to quash, the proponent of a subpoena "'must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence.'" *United States v. Pena*, No. 15-CR-551 (AJN), 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) (quoting *United States v. Barnes*, 560 F. App'x 36, 39–40 (2d Cir. 2014)).

In their opposition to Victim 1's motion to quash, Defendants lay bare their purpose for serving the subpoenas: to cull up impeachment evidence as to each of the victims. *See* Def. Opp. at 1 (noting that the "requests directly bear on Alleged Victim 1's credibility, motive, and bias – subjects that are central to trial and well within the scope of permissible impeachment"). This is, in some respects, fatal, as Rule 17(c) may not be used to obtain materials solely for purposes of impeachment. *See, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (collecting cases, noting "[c]ourts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment"); *United States v. Weissman*, No. 01 CR 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (collecting cases that "articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes"). Because Rule 17(c) subpoenas may be used to obtain only *evidentiary* material, and because impeachment material is not itself evidentiary, Defendants subpoenas are necessarily deficient. *See Cherry*, 876 F. Supp. at 553 ("[D]ocuments are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment." (citing *United States v. Nixon,* 418 U.S. 683, 701 (1974))).

To be sure, Rule 17(c) authorizes service of subpoenas that are returnable *at trial* ("trial subpoenas") to obtain impeachment material. *See United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018) (collecting cases). But unlike subpoenas that are returnable prior to trial, subpoenas for impeachment material are only returnable "if and when[ ] the witness who has made the statement takes the stand and testifies. The defendant only then is entitled to inspect [these] statements[.]" *United States v. James*, No. 02-CV-0778 (SJ) (CLP), 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (first and second alteration in original) (quoting *United States v. Palermo*, 21 F.R.D. 11, 13 (S.D.N.Y. 1957)). This is, as the Court has previously remarked, a "common sense rule. Unless the witness about whom impeachment material is sought actually testifies (or [her] statements are admitted under circumstances making [her] subject to impeachment pursuant to Rule 806), the evidence is not admissible." *Percoco*, 2018 WL 9539131, at *1.

Given that each subpoena's return date is pegged to the first day of trial, as currently constructed, the subpoenas can only be characterized as *pre*-trial subpoenas. *See United States v. Seabrook*, No. 16-CR-467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) (collecting cases in which Court rejected requests for production of impeachment material on the first day of trial); *United States v. Giampa*, No. S 92 CR. 437 (PKL), 1992 WL 296440, at *3 (S.D.N.Y. Oct. 7, 1992) ("[T]he rationale behind the well-established rule that impeachment materials are generally not subject to pretrial production applies with equal force to a request that such documents be produced on the first day of trial. Impeachment statements are generally not subject to pretrial production under Rule 17(c) because such statements ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." (internal citations and quotation marks omitted)). As such, Defendants' requests for the materials

identified in the subpoenas is inappropriate (and thus unreasonable) at this time.

A faulty return date is not the only thing that plagues Defendants' subpoenas. For the most part, the subpoenas also fail to satisfy the standard set out in *United States v. Nixon*, 418 U.S. at 600 – *i.e.*, that Rule 17(c) subpoenas must seek materials that are (i) relevant, (ii) admissible, and (iii) specifically identified.

Consider first the Instagram Subpoenas. Each subpoena requests, from each of the victims, in some manner, "[a]ll content data, records, and other information relating to all interactions between the account and other Instagram users" between certain dates, including "posts, comments, likes, [and] follows," "all associated metadata," "[a]ll content data edited or archived," and "all content data sent, created, or stored [] and all associated metadata . . . that mentions or concerns" Defendants. *See generally* Dkts. 294-1 (Victim 1), 301-1 (Victim 2), 317-1 (Victim 6). Defendants' dragnet approach to obtain virtually "all" the Instagram records of each victim has the hallmarks of an impermissible fishing expedition, notwithstanding that the requests include moderate temporal limitations. *See United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*."); *United States v. Avenatti*, No. (S1) 19-CR-373 (PGG), 2020 WL 508682, at *5–6 (S.D.N.Y. Jan. 31, 2020) (quashing request for "all communications" that reference Defendant over a nine-month period). Moreover, the Instagram Subpoenas fail to identify any admissible evidence with even the slightest modicum of specificity. Instead, Defendants appear to seek any Instagram data from Victim 1, Victim 2, and Victim 6, that *may*, depending on what it shows, prove useful. Defendants' blind optimism is not

5

enough to satisfy *Nixon*.³ Even if "the proponent of a Rule 17(c) subpoena [has] reason to believe certain materials exist, [] the proponent must still 'specifically identify the materials [the proponent] is seeking to bear out his [or her] suspicions.'" *United States v. Bergstein*, No. 16-CR-746 (PKC), 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) (quoting *Pena*, 2016 WL 8735699, at *3). Defendants make no effort in the Instagram Subpoenas.⁴ Accordingly, each of the Instagram Subpoenas must be quashed.

For similar reasons, the Communication Subpoena issued to Victim 2 must be quashed in full and the Communication Subpoena issued to Victim 1 must be quashed in part. The Communication Subpoenas broadly request "communications" between the victims and various friends that "mention or concern" either (i) trips during which the women were allegedly assaulted, or (ii) Defendants. *See* Dkts. 294-2 (Victim 1), 301-2 (Victim 2). As with the requests in the Instagram Subpoenas, none of these requests meet *Nixon*'s standard of identifying *specific*, *admissible* evidence. Defendants' hope that "communications" that "concern or mention" topics and individuals implicated by this case may ultimately prove to be relevant and admissible at some point down the line is insufficient to sustain their burden under Rule 17(c). Simply put, "if the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, the

---

³ In their opposition to Victim 1's motion to quash, Defendants argue that "documents responsive to the subpoenas *would likely be* admissible at trial," because "[s]tatements made by [] Victim 1 concerning the allegations, her testimony, or public reaction to her claims are admissible as non-hearsay admissions or prior inconsistent statements, and contemporaneous posts reflecting narrative-shaping, coordination with others, or reactions to criticism are probative of bias and motive to testify in a particular manner." Def. Opp. at 2–3 (emphasis added). Maybe so. But Defendants do nothing more than speculate that such materials *may* exist somewhere in the heap of data that they are requesting from each victim. Because Defendants "can only speculate about what might be in" the communications and other records that they are demanding, the subpoenas must be quashed. *Avenatti*, 2020 WL 508682, at *6.

⁴ Thus, even if Defendants were to argue that the Instagram Subpoenas "may have some evidentiary basis other than impeachment," the victims' motions to quash the subpoenas would still be meritorious. *Weissman*, 2002 WL 31875410, at *1.

requirement of specificity [has] not [] been met." *See United States v. Sawinski,* No. 00 cr. 499, 2000 WL 1702032, *2 (S.D.N.Y. Nov.14, 2000) (alteration and internal quotation marks omitted). Defendants' inability to identify specifically any communications that may be relevant and admissible – other than for *potential* impeachment purposes – dooms the Communication Subpoenas.

Two requests in the Victim 1's Communication Subpoena are substantively different than the remainder. Request #1 of Victim 1's Communication Subpoena demands "[t]he Gmail-native version of a full email chain between" Victim 1 and a friend, "sent in June 2011, which was produced to the Government in November." Dkt. 294-2. Request #9 to the same subpoena requests "[m]etadata associated with three photographs produced by [Victim 1] to the Government." *Id.* Victim 1 concedes that "[t]hese requests," unlike the others, "are narrowly targeted and relate to evidence provided to the government." Victim 1 Br. at 8. Still, Victim 1 argues that "the format of information sought requires a professional service to re-format the documents to comply with the Defendants' instructions," claiming that "[t]his service should be paid for by the Defendants." *Id.* Defendants respond by arguing that these two requests do not necessitate professional services, as "[e]xporting an email chain in native format and preserving associated metadata are routine, user-level functions of Gmail and ordinary smartphones; they do not require forensic analysis, specialized technical expertise, or third-party vendors." Def. Opp. at 8.

The Court agrees with Defendants as to Requests #1 and #9 of Victim 1's Communication Subpoena. Victim 1 is directed to produce all materials responsive to Requests #1 and #9 as soon as practicable. Victim 1 shall bear her own costs in responding to these two narrow, ordinary-course requests.

In sum, for the reasons stated herein, Victim 1's motion to quash is GRANTED in part and DENIED in part. Victim 2's motion to quash is GRANTED. Victim 6's motion to partially quash is GRANTED.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 282, 285, 301, and 316.

SO ORDERED.

Date: January 15, 2026
New York, NY

VALERIE CAPRONI
United States District Judge