QC1BALEC1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          24 Cr. 676 (VEC)

ALON ALEXANDER, *et al*.

                                       Conference
               Defendants.

------------------------------x

                                    New York, N.Y.
                                    January 12, 2026
                                    11:00 a.m.

Before:

                    HON. VALERIE E. CAPRONI,

                                    District Judge

                      APPEARANCES

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
BY:  MADISON SMYSER
    ANDREW JONES
    ELIZABETH ESPINOSA
    KAIYA ARROYO
    Assistant United States Attorneys

BLACK SREBNICK, P.A.
    Attorneys for Defendant Alon Alexander
BY:  HOWARD SREBNICK
    JACKIE PERCZEK


AGNIFILO INTRATER, LLP
    Attorneys for Defendant Oren Alexander
BY: MARC AGNIFILO
    TENY GERAGOS
    ZACH INTRATER

QC1BALEC1

APPEARANCES (Continued)


WALDEN MACHT HARAN & WILLIAMS, LLP
        Attorneys for Defendant Tal Alexander
BY:   MILTON WILLIAMS
        DEANNA PAUL
        ALEXANDER KAHN


Also Present:
Gabriella Salerno, USAO, paralegal specialist
Sarju Patel, paralegal
Jacob Goldman, paralegal
Justine Atwood, Special Agent, FBI

(Case called)

THE DEPUTY CLERK:  Counsel, please state your appearance for the record.

MS. SMYSER:  Good afternoon, your Honor.

Madison Smyser, Elizabeth Espinosa, Andrew Jones and Kaiya Arroyo for the government.  And we're joined at counsel table by Paralegal Specialist Gabriella Salerno and Special Agent Justine Atwood of the FBI.

THE COURT:  Good morning.

MR. SREBNICK:  Good morning, your Honor.

On behalf of Alon Alexander who is here, Howard Srebnick, together with my law partner Jackie Perczek who is in jury box in the second row and our law clerk Jake Goldman in the front row.

MR. AGNIFILO:  Good morning, your Honor.

Mark Agnifilo for Oren Alexander.  And with me is Zach Intrater and Teny Geragos, who I would select as jurors in this case if given the opportunity.

THE COURT:  I bet you would. good morning.

MR. WILLIAMS:  Good morning, your Honor.

Milton Williams and my colleagues Deanna Paul, Alex Kahn and our paralegal Sarju Patel are in the jury box.

THE COURT:  Okay.  We've got a number of hanging chads before we turn to the 412 argument.  There's a public indictment which then got sealed.  Has an arrest been made?

MS. ARROYO:  I can speak to that, your Honor.

THE COURT:  Okay.

MS. ARROYO:  There is a public indictment.  What was supposed to have been sealed on Friday was the attachment that had the unredacted version of the foreperson's name.

THE COURT:  That's the only thing that was the issue?

MS. ARROYO:  Yes, your Honor.

THE COURT:  Okay.  That was not, apparently -- I was hearing this secondhand -- was not well explained to the magistrate judge.

MS. ARROYO:  Understood, and I apologize for that. We'll be sending a supplemental letter to the magistrate to let her know. The defendants were arrested this morning in the federal courthouse at approximately 8:30 a.m.

THE COURT:  So my plan was to arraign them tomorrow on those counts.  Who are the new defendants on the new counts?

MS. ARROYO:  Alon and Oren.

THE COURT:  Any objection to proceeding with the arraignment tomorrow?

MR. AGNIFILO:  No, your Honor.

MR. SREBNICK:  No, your Honor.

THE COURT:  That's that.  I received a letter this morning about notice of alibi and conduct by the defense investigators. Any reason why the defense cannot respond to that letter by 9 a.m. tomorrow?

MR. AGNIFILO:  We can do that, Judge.

THE COURT:  And as to the investigators.  From the hearsay contained in the government's letter, I understand that your view is whatever the person did was like a subcontractor of a contractor.  The message needs to go out to stop this.

MR. AGNIFILO:  Understood.

THE COURT:  There will be consequences if it continues, and I know you understand that.  I expect better from all of you, so I'm gonna assume that it is not you.  That it was them, but it's your responsibility.

MR. AGNIFILO:  It's our responsibility and we addressed it and we'll tell the Court exactly how.

THE COURT:  Lastly, I have some questions that touch on the pseudonym issue.  So as to victim-six -- by the way, is victim-six's lawyer here just so I have a sense of who is here.

MS. ESPINOSA:  Yes, your Honor.

THE COURT:  Hi.  My question is the concern that was raised had to do with combining first name profession and state of residence.  And my question is, is any of that evidence going to be adduced?  And if so, why.  It doesn't seem particular relevant to me.

MS. ESPINOSA:  Your Honor, her profession will be adduced because it will come up during the course of her testimony.  And to the extent we need to get into more detail, I ask that we go to sidebar.  It factors into her decision

around disclosure.  And she also obtained information during the course of her weekend with the defendants relating to her profession that was notable to her.  But in particular because of concerns regarding the impact on her education and profession at the time, she made the decision not to make any realtime disclosures to law enforcement, among others.  And so that will be relevant.

THE COURT:  What about state of residence?

MS. ESPINOSA:  The state of residence we could likely be somewhat more oblique about.

THE COURT:  Cause why would it --

MS. ESPINOSA:  Your Honor, one of the counts involving victim-six is inducement to travel for the purpose of engaging in an unlawful sex act, so we will be introducing evidence of her travel from another state to New York.  She actually did fly from yet a different state, so it's possible we may be able to work through that. I need to take a little, but it is going to need to be made clear.  She does not reside in New York and that she was induced to travel from another state into New York.

THE COURT:  That I understand.  I'm gonna want to hear more about that, but we can do that later.  There's too much else going on.  I want to understand why the profession needs to come out.  And on the victim-20, sort of same questions. Does her hometown become relevant, her friend's name.  Does

that necessary to the case, and the fact that she speaks Spanish.

MS. ESPINOSA:  Yes, your Honor.  Her counsel is also here should you wish to hear from her directly.  With victim-20 where she was residing and when changes at various points during the course of her interactions with the defendant and is relevant to essentially explaining how she came to be in the same place as the defendants at various points in time.  And so with her it is particularly unavoidable that some of these sort of geographical locations and moves will be part of her testimony.  Otherwise, it would be extremely confusing to the jury what was going on to try to talk around that.

THE COURT:  Understood. Okay.  We'll deal with that more in the fullness of time.  So that brings us to 412.  So my view is, we're gonna take these in order.  Who's taking the laboring oar for the defense?  And is it all the same laboring oar or is it various laboring oars?

MR. AGNIFILO:  I think we've divvied it up, so there's no one laboring oar on these, Judge.

THE COURT:  Who's in charge of victim-1?

MS. PAUL:  I am, your Honor.

THE COURT:  Let me just say as to all of these.  We're going to talk about everything, but I want you to start with why the evidence is relevant, not 412, but let's start with basic relevance.  Cause for a lot of this evidence, it's not

clear to me why the evidence is relevant.

MR. JONES:  Your Honor, maybe this is something for all of us, because I think 412 obviously contemplates broadly sealed proceedings, and I'm just unsure like at what level of detail.  Cause I think if we go too low here, we're dealing with specific accounts of what at least arguably is sexual behavior, sexual predisposition.  I just want to make sure we're kind of addressing the Court's concern while also kind of staying protective of the victims and within kind of the contemplated scope of rule 412. So I'm unsure what the Court wanted exactly this morning.

THE COURT:  I was hoping that we could do most of this without having it be sealed.  Are all of these briefs under seal?

MR. JONES:  Yes, your Honor.  I think 412(c) contemplates that absent an order from the Court, that everything would be sealed.  I know we did not move for sealing because we assumed that given rule 412 that it was accepted under seal.

MS. PAUL:  Your Honor, defense did move for it to be under seal after conferring with the government, so it is under seal.

THE COURT:  So I guess I had not focused on that. Thank you for bringing this to my attention.  How much of this can we deal with in open court?

MR. JONES:  Your Honor, I think there's probably some legal argument.  There's broadly some broad categories that we can do.  As I think about victim-1 specifically, one of the first things that's going to be discussed is an argument about something that is -- I don't even think it's contested it is covered under 412(a).  I'm happy to have some discussion, some argument about it now.  I just assume I'll be asking the Court to do some of this, this afternoon as well.  I think it will be more effective and can talk more fulsome under seal.  I agree that I want to do some stuff publicly.  We all want to, but there's just limits.

THE COURT:  Without regard to victim-1, sort of more generally.  An awful lot of what the defense wants to put in is photographs.  The question is, why are those photographs relevant; that is, people who are at the beach, people are on a boat.  Why is what they're wearing relevant?

MS. GERAGOS:  I think your Honor, please forgive me.

THE COURT:  You sound terrible.

MS. GERAGOS:  Awful.  I think what the photographs question has to deal with allege victim number two.

THE COURT:  It's no particular victim.  There are several victims that they're photographed that y'all want to put in.  Am I wrong?

MS. GERAGOS:  There are, but I think it turns with respect to each alleged victim as to the import of it.  And why

it's relevant with allege victim number two, it's incredibly important in terms of the timeline of what she alleges. I think Ms. Paul can address the photograph with allege victim-1. But for many of them -- and it may turn for our relevance arguments for each allege victim. But in terms of the timeline of each weekend or the timeline of their allegation.

THE COURT: This is not gonna work. With all apologies to everybody who's here, other than victims, I'm gonna seal the courtroom because this is not an effective way of arguing this. That is the same thing I've read already and it's not helpful. So if you're not part of the U.S. Attorney's office, if you're not part of the defense team, you're not a victim or you're not a victim's lawyer. You need to clear out. With apologies to everybody who came to hear this.

(Pages 11 - 180 SEALED)