**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

TAL ALEXANDER, ALON ALEXANDER
and OREN ALEXANDER,

Defendants.

Case No.: 24-CR-00676 (VEC)

**MEMORANDUM OF LAW IN OPPOSITION TO**
**NON-PARTY WITNESS 2'S MOTION TO QUASH SUBPOENA**

Defendants Tal, Alon, and Oren Alexander, through counsel, respectfully submit this memorandum in opposition to Non-Party Witness 2's motion to quash a trial subpoena.

## PRELIMINARY STATEMENT

Non-Party Witness 2's testimony is not peripheral. It is directly relevant and necessary to the defense against three separate counts, each carrying a potential life sentence. The subpoena at issue is a trial subpoena for testimony and documents—returnable the morning of the witness's testimony, on a date not yet determined. It seeks narrowly tailored testimony and two discrete categories of documents,[1] which are directly relevant to Counts Five, Six, and Seven of the indictment. Nothing about this subpoena is unreasonable, oppressive, or improper.

Non-Party Witness 2's motion relies on a misapplication of the legal standard for trial subpoenas, an exaggeration of personal burden, and an affidavit that omits critical context, downplays Non-Party Witness 2's sustained relationship with the defendants during the charged period, and sidesteps the plainly material nature of her testimony. Rule 17 does not permit a non-party to unilaterally decide that her testimony is inconvenient or uncomfortable in a case of this magnitude.

For the reasons set forth below, the motion should be denied in its entirety.

## FACTUAL BACKGROUND

During the period relevant to the indictment, Non-Party Witness 2 was a frequent associate of the defendants, spending numerous weekends with them. Critically, her sister was in a romantic relationship with defendant Alon Alexander at the time of the alleged assaults of Minor Victim 3, Victim 4 and Victim 5, a fact Non-Party Witness 2 omits from her sworn declaration. The defense

---

[1] Defendants withdrew the second request (i.e. for all communications that mention or concern Minor Victim 3).

2

has served a trial subpoena on Non-Party Witness 2 seeking her testimony and two narrowly tailored categories of documents. The subpoena is not returnable on a fixed date, but on the morning of her trial testimony—the date of which remains undetermined, which was discussed with counsel and Non-Party Witness 2 during a meet and confer on January 18, 2026.

Despite her intimate connection to the parties and events at issue at trial, Non-Party Witness 2 now seeks to avoid the obligations set forth in the subpoena, citing professional inconvenience, a minor foot injury, and a professed inability to recall any relevant facts. Her reluctance appears to stem not from any cognizable Rule 17 hardship, but from a desire to avoid the optics of being involved in this matter.

## ARGUMENT

### I.    The Subpoena is a Proper Trial Subpoena

#### A.  The Subpoena Is Not Subject to the *Nixon* Standard

At the outset, the motion to quash rests on a fundamental legal error: the subpoena at issue seeks live trial testimony, yet Non-Party Witness 2 incorrectly frames her motion under the stringent *Nixon* standard for pre-trial subpoenas. The requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974), do not apply to subpoenas compelling testimony at trial.[2] As discussed with counsel on January 18, 2026, the documents sought are returnable on the date of Non-Party Witness 2's testimony.[3] *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *United*

---

[2] While the defense maintains that the *Nixon* standard is inapplicable to a subpoena for trial testimony, the request nonetheless satisfies its three-part test: (1) relevancy, (2) admissibility, and (3) specificity. *Nixon*, 418 U.S. at 699-700. Here, each prong is met, and compliance will not result in undue delay or burden, the central inquiry under Federal Rule of Criminal Procedure 17(c).

[3] The subpoena's return date—the morning of the witness's testimony—is standard trial practice and was expressly explained to Non-Party Witness 2 and her counsel by defense. The fact that the exact date is not yet determined reflects the realities of an ongoing jury trial, not any defect in service or bad faith.

3

*States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021); *cf. Nixon*, 418 U.S. at 701 ("[T]he need for evidence to impeach witnesses is insufficient to require its production in advance of trial.") (emphasis added).

A subpoena demanding a witness's presence at trial invokes a different analysis, one that squarely implicates a defendant's Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. Under Federal Rule of Criminal Procedure 17(c)(2), the inquiry is whether compliance would be "unreasonable or oppressive." It plainly is not.

Courts in this Circuit are reluctant to quash trial subpoenas for testimony in advance of trial. *United States v. Seeger*, 180 F. Supp. 467, 468 (S.D.N.Y. 1960) ("The materiality of a witness' proffered testimony must rest with the trial judge after the witness has been sworn."). Ruling in advance that testimony would not be material "would deprive the defendant of his constitutional right to compulsory process under the Sixth Amendment." *Id.* Non-Party Witness 2 bears the heavy burden of showing oppression, which is not met by claims of mere inconvenience or professional disruption.

### B. Non-Party Witness 2's Claimed Burden is Pretextual and Legally Insufficient

The thrust of the motion is not undue burden; it is unwillingness. Non-Party Witness 2 indicated to defense counsel that her reluctance to testify stems from concern about the optics of being associated with this case. That is not a cognizable basis to quash a subpoena. Rule 17 does not permit a witness to opt out of testifying in a federal criminal trial because doing so is inconvenient or professionally awkward.

Non-Party Witness 2 is a highly compensated attorney at a premier global law firm with access to resources, flexibility, and institutional support. Her claim that travel would be "disruptive" rings hollow. Her testimony will be brief and can be scheduled to minimize disruption. Courts in this Circuit routinely compel far more burdensome testimony from far less

resourced witnesses. Countless professionals, including members of the bar, testify in court daily. Any burden here is outweighed by the defendants' Sixth Amendment rights, particularly in a case involving charges of this gravity and three men who face life imprisonment.

## II.    Non-Party Witness 2's Testimony is Relevant, Admissible, and Critical to the Defense

### A. Testimony Concerning Counts Five, Six and Seven

Non-Party Witness 2's testimony is essential to the defense on Counts Five, Six, and Seven. Non-Party Witness 2 omits entirely from her affidavit that her sister was dating Alon Alexander at the time of the alleged conduct. That omission is telling. Non-Party Witness 2 spent a significant amount of time with the defendants during the period of the charged conduct, including the timeframe alleged in Counts Five, Six, and Seven. Non-Party Witness 2's proximity, access, and sustained presence make her an essential witness, and her attempts to dismiss its relevance as "marginal" are baseless.

First, the defense has served an alibi notice for Counts Six and Seven, which relies on a photograph in which Non-Party Witness 2 appears alongside the defendants. Her testimony places the defendants together, with her, during the charged period and directly supports the alibi defense. Her claim that she does not recall the precise circumstances of the photograph does not preclude authentication, nor does it negate its relevance. Memory gaps are for the jury to assess. Non-Party Witness 2's motion frivolously suggests that because others are in the photo, they should be called instead. The defense is entitled to call the witnesses it chooses. Non-Party Witness 2 is a competent witness to authenticate the photo and identify the circumstances of when and where the photo was taken; forcing the defense to rely on other witnesses is an improper burden on the presentation of the defense case.

Second, the government's case on Count Five hinges on the credibility of Minor Victim 3, who is expected to testify that her mother learned of the alleged assault as a result of Non-Party Witness 2 and, when confronted by her mother, Minor Victim 3 recharacterized the incident. Non-Party Witness 2 is expected to testify, consistent with her affidavit, that she has "no personal knowledge of any fact" relating to the allegations; "no present recollection" of hearing anything about them; and had not previously heard Minor Victim 3's name. That Non-Party Witness 2 "does not recall" various events does not defeat the subpoena; it underscores why her testimony matters. Surely, if Non-Party Witness 2 had learned that her sister's boyfriend, Alon Alexander, was involved in a gang assault of a minor at a beach house in the Hamptons over Memorial Day Weekend 2009, she would remember. And the fact that Non-Party Witness 2 messaged one of the Alexanders a month later to ask if she and her friends could stay in the same house where Minor Victim 3 was allegedly raped undermines Minor Victim 3's account and allegations. Non-Party Witness 2's request to testify remotely should also be denied, as the jury's ability to observe her demeanor in person while she makes these claims is critical.

Further, this is not, as her counsel suggests, inadmissible hearsay. It is direct evidence offered to rebut the Government's theory of how the allegation came to light. The jury must be allowed to hear from the very person alleged to have started this rumor and assess her testimony that she recalls nothing. Non-Party Witness 2's claim that she has never heard Minor Victim 3's name is, in and of itself, highly probative. It directly supports the defense theory that Minor Victim 3 has pieced together her story from social media, not from personal experience, and is now inserting individuals like Non-Party Witness 2 into her narrative.

### B.  The Document Requests Are Narrow, Relevant, and Not Burdensome

The subpoena seeks two limited categories of documents: (1) photos and videos from Memorial Day Weekend 2009 (i.e., a defined four-day period between May 21, 2009 and May 25,

2009); and (2) communications with or about the defendants between May 15, 2009 and August 31, 2009, which is also a short, clearly delineated timeframe.

This is not a fishing expedition. In late June 2009, approximately a month after Minor Victim 3's alleged assault, Non-Party Witness 2 sent one of the Alexander brothers a message asking them to host her and her friends at their Hamptons share house for a weekend in August. The subpoena seeks Non-Party Witness 2's communications with those friends about wanting to stay with the Alexanders' Hamptons share house i and plans concerning the same. These materials go directly to alibi, impeachment, and the credibility of the government's witnesses. Non-Party Witness 2 does not claim that compliance is impossible, only that it is inconvenient.

### III. The Subpoena is Valid and Not Financially Burdensome as Defendants Offered to Coordinate and Cover the Reasonable Costs of Non-Party Witness 2's Travel

Non-Party Witness 2 asserts that the subpoena should be quashed because the defendants did not include the required legal mileage allowance with the $40 witness attendance fee when the subpoena was served. Mot., ¶15. Non-Party Witness 2 is correct that the Federal Rules of Criminal Procedure require a party serving a subpoena to (1) "deliver a copy of the subpoena to the witness" and (2) "tender to the witness one day's witness-attendance fee and the legal mileage allowance." Fed. R. Crim. P. 17(d). *United States v. Bradley*, No. CR405-59, 2006 WL 8429685, at *1 (S.D. Ga. Mar. 16, 2006). Courts have recognized that the "plain meaning" of this language requires the simultaneous tendering of both the witness fee *and* "the reasonably estimated mileage allowed by law with service of a subpoena." *Id.* (citing *CF&I Steel Corp. v. Mitsui & Co.*, 713 F.2d 494, 496 (9th Cir. 1983) (construing Fed. R. Civ. P. 45(c)); *United States v. Moore*, 225 F.3d 637, 644 n.2 (6th Cir. 2000); *United States v. Boffa*, 513 F.Supp. 512, 517 (D. Del. 1981); 2 Federal Practice and Procedure § 276 at 270 ("Service of a subpoena has been held to be effective only if the fee for one day's attendance and the mileage allowed by law are tendered to the witness when the

subpoena is delivered."). The legal mileage allowance is currently $0.725 per mile. *See* 5 U.S.C. § 5704(a)(1) (authorizing the General Services Administration to establish the mileage reimbursement for federal employees who use privately owned vehicles on official business); 28 U.S.C. § 1821(c)(2) (providing that computation of mileage is to be made on the basis of the "uniformed [sic] table of distances adopted by the Administrator of General Services."). Thus, Non-Party Witness 2 should have been furnished a check for $2,034.25 (2,806 miles x 0.725). However, in lieu of providing the mileage allowance, Defendants included a "Standby Notice" informing Non-Party Witness 2 that defense counsel would "coordinate and cover the reasonable costs" of Non-Party Witness 2's travel to New York, including airfare, hotel accommodations, and meals. Defense counsel further explained this during a meet and confer on January 18, 2026.

In *United States v. Bradley*, a non-party witness moved to quash a subpoena based on improper service, failure to provide travel accommodations and expenses, and medical reasons. 2006 WL 8429685, at *1. The defendant opposed the motion, arguing that the witness was a "critical defense witness" who was properly served, and that defense counsel spoke with the witness and informed her "that travel was being arranged" and that she would not be required to incur expenses for airfare, transportation to court, or the cost of food and lodging if an overnight stay in Savannah was required. *Id*. Although the Court acknowledged that the defendant "may comply with Rule 17(d) by calculating and tendering the mileage allowance required by law," it took a practical approach by

> emphasiz[ing] that in lieu of the standard legal mileage allowance, *it would behoove the witness to accept an airplane ticket if provided by defendant's counsel,* for while a witness who travels by common carrier shall be paid for the actual expenses of travel, reimbursement for such expenses is typically not provided until after the expense has been incurred and a "receipt or other evidence of actual costs" has been furnished. 28 U.S.C. § 1821 (c)(1). *Prudence may suggest accepting a pre-paid ticket now, rather than relying on an obligation to later pay the witness for expenses incurred.*

*Id.* at *2. The Court granted the motion to quash "[b]ecause it does not appear that the provisions of Fed. R. Crim. P. 17(d) have been strictly complied with," but cautioned the witness that "should these technical deficiencies be remedied, the witness must honor the subpoena and appear in Savannah, Georgia at the appointed time to provide testimony in this criminal case."[4] *Id.*

Here, the Court should permit the defendants to remedy this technical deficiency by either tendering the mileage allowance of $2,034.25 to Non-Party Witness 2's counsel forthwith, or, as counsel offered in the subpoena documents and during conferral with counsel, or by Non-Party Witness 2 accepting undersigned counsel's offer to coordinate and prepay for Non-Party Witness 2's travel. Either way, there will be no financial burden to Non-Party Witness 2, and the subpoena should not be quashed on this basis.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendants respectfully request that the Court deny Non-Party Witness 2's motion to quash in its entirety and compel her appearance at trial.

---

[4] In *Bradley*, there was also a question over whether the witness was actually personally served. 2006 WL 8429685, at *1. Here, Non-Party Witness 2 was personally served and provided the witness attendance fee.

Dated:    New York, NY                     Respectfully submitted,
          February 1, 2026


                                          /s/ *Milton L. Williams*
                                          ─────────────────────────────
                                          Milton L. Williams
                                          Deanna M. Paul
                                          Alexander Kahn
                                          Walden Macht Haran & Williams LLP
                                          250 Vesey Street, 27th Floor
                                          New York, NY 10281
                                          Tel: (212) 335-2030
                                          mwilliams@wmhwlaw.com
                                          dpaul@wmhwlaw.com
                                          akahn@wmhwlaw.com

                                          *Counsel for Tal Alexander*


                                          /s/ *Marc Agnifilo*
                                          ─────────────────────────────
                                          Marc Agnifilo
                                          Teny Geragos
                                          Zach Intrater
                                          Agnifilo Intrater LLP
                                          140 Broadway, Ste. 2450
                                          New York, NY 10005
                                          Tel: (646) 205-4350
                                          marc@agilawgroup.com
                                          teny@agilawgroup.com
                                          zach@agilawgroup.com

                                          *Counsel for Oren Alexander*


                                          /s/ *Howard Srebnick*
                                          ─────────────────────────────
                                          Howard Srebnick
                                          Jackie Perczek
                                          Black Srebnick
                                          201 South Biscayne Blvd., Suite 1300
                                          Miami, FL 33131
                                          Tel: (305) 371-6421
                                          hsrebnick@royblack.com
                                          jperczek@royblack.com

                                          *Counsel for Alon Alexander*