

<table>
<tr><td>17 State Street<br>39th Floor<br>New York, NY 10004<br><br>Office 212·232·2500<br>Fax 212·232·2509<br><br>TorganCooperAaron.com</td><td>ATTORNEYS AT LAW<br>EVAN TORGAN<br>EDWARD T. COOPER<br>MITCHELL K. AARON<br><br>JONATHAN TABAR<br>BRENDAN BROWN<br><br>MITCHELL R. DRACH<br>Of Counsel</td></tr>
</table>

February 10, 2026

**VIA ECF**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

     Re: *United States v. Alexander et al.*, Docket No. 24-CR-00676 (VEC)
       Motion to Quash Rule 17(c) Subpoena on behalf of Victim 2

Your Honor:

  We respectfully submit this reply on behalf of Victim 2 to the letter response filed by the defense in opposition to our letter motion seeking to quash a subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c) ("Rule 17"). *(See ECF Doc. 392 Exhibit A).*

  In their response, the defense refuses to acknowledge the possibility that a witness can simply make a mistake during testimony, especially when it comes to answering pointed questions that embed legal terms and doctrines. At the outset, there is a stark difference between a witness being *mistaken* as to an answer while testifying, and a victim intentionally testifying *falsely* on an issue. Notwithstanding the protestations by the defense, in this instance, it remains that Victim 2 was solely mistaken in her answers regarding the origin of the subject document entitled "Detailed Timeline.docx." (the "document").

  As fully set out in the Declaration by attorney Ira Meyerowitz, Esq., the document was created by him with Victim 2's assistance within the context of the attorney-client relationship and has never been disclosed to any third-parties. *(See Meyerowitz Dec., ECF Doc. 392, Ex. B).* As confirmed by the Government, the document was never provided to them and they are not in possession of it. Contrary to the defense's contentions however, such incorrect testimony by Victim 2, does not divest the document of the protections afforded by the attorney-client privilege and attorney work-product doctrine.

| TORGAN, COOPER + AARON, P.C. |

During cross-examination, Victim 2 testified that the document was created "shortly after [she] contacted the civil attorneys" and also testified that she prepared with her "civil attorneys for [her] meeting with the United States government." Such testimony confirms the context within which the subject document was prepared by Mr. Meyerowitz in collaboration with Victim 2.

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). It protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). All three elements are satisfied here.

"The work-product privilege provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002, & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003). Two requirements must be met: (1) the document was prepared by or at counsel's direction, and (2) in anticipation of litigation. As fully set out in our letter motion, and in Mr. Meyerowitz's Declaration, both are satisfied.

The defense places great emphasis on Victim 2's answer "No" when asked if she created the document "in preparation for litigation." This answer however reflects Victim 2's subjective state of mind, as she testified she was "unsure" whether to sue, not a legal determination that the document lacks privilege. Victim 2's uncertainty about whether or not she was going to proceed with a lawsuit does not defeat work product protection. To the contrary, "anticipation of litigation" includes the period when a client consults counsel about whether to pursue legal action. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). A client consulting counsel while uncertain about litigation is precisely the scenario the attorney-client privilege protects. The purpose was to obtain legal advice about her options, which satisfies the third *Mejia* element. But just as importantly, the document was created as work product within the context of securing legal advice, whether or not litigation was going to ensue.

Although defense counsel would like to minimize the context within which Victim 2 provided the aforementioned mistaken responses, Victim 2 gave this testimony after testifying for hours under intense cross-examination about a traumatic sexual assault. She was questioned about minute details from events occurring ten years ago. She answered a myriad of rapid questions designed to challenge her credibility on every point.

The exchange about the document in question occurred on recross-examination, late in the day, after extensive questioning. The Court and parties immediately recognized Victim 2 was confused about what had been disclosed. Defense counsel herself acknowledged that it is the attorney who turns over information to the Government. Courts do not expect lay witnesses to speak with legal precision about privilege, particularly sexual assault victims testifying about traumatic events. A client's imprecise description of document handling during cross-examination does not override the protections of the attorney-client privilege.

| TORGAN, COOPER + AARON, P.C. |

The defense cannot manufacture waiver through cross-examination. Eliciting testimony from a sexual assault victim that contradicts the privileged status of attorney-work product, then argue her testimony constitutes waiver, is a tactic that respectfully should not be permitted. Victim 2 was never asked: "Did your attorney create this document?" or "Was this document prepared at your attorney's direction?" or "Did you share the actual document with prosecutors, or just discuss the events with them?" Instead, she faced rapid-fire questions during recross-examination designed to elicit "yes" answers.  Moreover, the contention that our presence in the courtroom's spectator gallery would allow us opportunity to interject objections about attorney-client privilege during testimony is simply disingenuous.  Similarly, the Government, who did not possess the document, could not readily object on privilege grounds.  If defendants could pierce attorney-client privilege by asking victims whether they "created" or "disclosed" attorney work product, without allowing the victim's counsel to assert privilege at the appropriate time, the privilege would be meaningless in criminal cases involving victims represented by separate counsel.

The defense's reliance on *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) is inapposite, because it involved actual third-party disclosure and a classic waiver issue. There, counsel transmitted materials to a public relations firm, and the court held that any attorney-client privilege was waived by disclosure to that non-privileged third party. 198 F.R.D. at 54-55. Here, by contrast, the document was created by counsel with Victim 2's assistance for the purpose of obtaining legal advice, remained confidential, and was never provided to the Government or any third party. No waiver comparable to that in *Calvin Klein* occurred.

Further contrary to defense counsel's contentions, waiver of the attorney-client privilege never occurred. "Waiver of the attorney-client privilege occurs only when the holder of the privilege voluntarily discloses or consents to the disclosure of privileged communications." *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987). Actual disclosure is required. Mistaken testimony about disclosure does not effect waiver. Moreover, a witness's mistaken belief about what was disclosed does not create waiver where no actual disclosure occurred. *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482 (S.D.N.Y. 2019). Victim 2 provided substantial materials to the Government such as photographs, Facebook messages, Instagram posts, among other things. As a lay witness unfamiliar with the mechanics of legal production, she mistakenly assumed that all materials in counsel's possession — including this document — had been provided to the Government. However, the document was properly withheld from any exchange as privileged material.

It is also of no moment that the document's title readily reflects that the document is a timeline of events. The document's title, or Victim 2's description of the document, does not constitute disclosure of the document's contents. Disclosure of the existence of attorney-client communications or their general subject matter does not waive the privilege as to the communications' contents. *In re von Bulow*, 828 F.2d at 103.

In sum, as fully set out in our letter motion, the document (i) was created within the context of the attorney-client relationship, (ii) constitutes attorney work-product, (iii) has always remained confidential and has never been disclosed outside the attorney-client relationship as the Government has confirmed that it does not have the document, and (iv) no waiver of the privilege

| TORGAN, COOPER + AARON, P.C. |

has ever occurred.  As such, the subpoena fails under *United States v. Nixon*, 418 U.S. 683 (1974) as the defense cannot satisfy *Nixon*'s requirement that the document be "admissible" when it is protected by attorney-client privilege and work product doctrine. *Nixon*, 418 U.S. at 700; *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

Notwithstanding the above, even if admissible – and it is not – the document's only relevance is impeachment, a purpose insufficient to support production under Rule 17(c). *Nixon*, 418 U.S. at 701. The subpoena's timing, issued after Victim 2 completed her testimony, confirms it is yet another fishing expedition. The defense had ample opportunity during cross-examination to question Victim 2 about the events in question. Now, they seek the privileged document hoping to find additional impeachment material. This is precisely the "general fishing expedition" *Nixon* prohibits. 418 U.S. at 700.

For the reasons set out in our letter motion and as set out above, Victim 2 respectfully requests that the Court quash the February 3, 2026, Rule 17(c) subpoena in its entirety.

Respectfully submitted,

TORGAN COOPER & AARON, P.C.

By:  */s/ Evan Torgan*
        Evan Torgan
        Jonathan Tabar

cc: All counsel (via ECF)