# AGNIFILO INTRATER

February 10, 2026

**VIA E-MAIL**
The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, NY 10007

Re:   *United States v. Alon Alexander, Oren Alexander & Tal Alexander*, 24 Cr. 676 (VEC)

Dear Judge Caproni:

We write in response to the government's February 9, 2026, letter opposing the defense's motion to exclude GX 1004 and the cited exhibits within it. Because the jury does not have sufficient evidence to conclude that the messages relate to the charged conspiracy without the accompanying testimony of a percipient witness, these exhibits should be excluded. The Court should require the government to try only the case it charged and prove that case to the jury beyond a reasonable doubt. Instead, we have spent multiple hours of trial time on uncharged "sexual assaults" that the defense has maintained should have been excluded in the first instance. Moreover, the exhibits should be excluded as inadmissible under Rule 404(b) because the only possible inferences go to Oren's character and propensity.

The messages contained in GX 1004 should also be excluded under Federal Rule of Evidence 403, as they are unfairly prejudicial, will cause undue delay, waste trial time and are not accompanied by testimony from witnesses who can provide necessary context and who are subject to cross-examination. The government offers GX 1004 in an effort to show the defendants' alleged *modus operandi*, but the messages themselves do not provide enough context to indicate that they relate to the alleged sex trafficking conspiracy. Instead, because they relate to a vacation, drugs, and women, the messages create a danger of unfair prejudice to the defendants by inviting the jury to draw baseless inferences about the defendants' conduct without sufficient foundation.

First, the government argues that "[t]he defendants used luxury accommodations and access to an exclusive experience to entice women to join them in a desirable vacation destination." (Gov't Ltr. at 2). But the government cannot prove this without a percipient witness to testify that she was recruited, enticed, or harbored. In fact, it was the defendants' friends and not the defendants who rented the separate yachts that the defendants stayed on. And the government cannot prove that access to the now infamously disastrous Fyre Fest was a thing "of value" as

The Honorable Valerie E. Caproni
February 10, 2026
Page 2 of 4

required by the sex trafficking statute without a witness.[1]  What the evidence makes clear is that luxury travel was a routine part of the lifestyle of these women and was not used to lure them to engage in a commercial sex act involving force, fraud, or coercion.

Second, the government argues that "[i]f the women the defendants trafficked failed to comply with sexual demands, the women would be kicked off the yacht and relegated to tents." (Gov't Ltr. at 2).  The government purportedly refers to an exchange between Patrick, Eric Dali, and the Alexander brothers where Patrick writes, "we need a couple tents for the girls that do not conform" and Oren replies, "Walk the plank." (*See* GX C-109-1).  But these messages themselves demonstrate why a percipient witness must necessarily provide context.  There is no indication that women who "do not conform" means women who do not comply with sexual demands as the government asserts.  For instance, Eric Dali later writes, "Might be limited on space … I may have a new girl that we kick one off for." (*See id.*).  A few weeks later, Alex writes, "let's all moor next to each other[.]  I have too many chicks[.]  Want some overflow." (GX B-116-1).  These messages indicate that compliance with sexual demands was *not* the basis for determining who would stay on the yachts or fly on the plane with the group.  In fact, when the defendants' friend, Patrick, says that whether there is room for certain women on the plane "Depends on Wednesday evening services," Oren expresses confusion before Patrick replies, "It's a joke." (GX C-109-6).  As to jokes, Oren's comment of "walk the plank" is an obvious reference to pirates.  The government has no evidence that any of the vessels on which the Alexanders stayed during the Frye Fest had "planks" that could be walked (let alone cannons, knives held between teeth, or Jolly Roger flags).

Third, the government argues that the "defendants also purchased drugs that would make their trafficking scheme more likely to succeed." (Gov't Ltr. at 2).  However, the evidence is that the group only discusses procuring mushrooms and MDMA for the trip.  These are not the drugs that the government has claimed the defendants used to incapacitate.  Rather, the government's theory is that the defendants used "sedative hypnotics," including GHB and alcohol, to drug the alleged victims.  In fact, the government's expert testified that MDMA would *not* facilitate incapacitation and did not address the physical effects of mushrooms whatsoever.  Moreover, nothing in the messages indicates that the women who went to Fyre Fest actually ingested either drug, let alone became incapacitated because of them.  Without such evidence, these messages have *de minimis* probative value that is significantly outweighed by risks of unfair prejudice and juror confusion.

Fourth, the government argues that "when a woman for whom all these accommodations had been provided did not agree to the defendants' sexual demands, she was assaulted while she was asleep." (Gov't Ltr. at 2).  This argument is baseless.  *Nothing* in the messages suggests that

---

[1] Introducing the Fyre Festival into this trial in and of itself is prejudicial. This United States Attorney's Office prosecuted the organizer of this event for fraud and other charges. It was a disastrously planned music festival where visitors went without basic food and accommodations. To tie the defendants to this festival would be unfairly prejudicial.

The Honorable Valerie E. Caproni
February 10, 2026
Page 3 of 4

the defendants made sexual demands, that Ms. Davis did not comply with sexual demands, or that she was assaulted as a result of non-compliance. If anything, the complete messages show the opposite—that Ms. Davis and Oren had a consensual sexual relationship that continued well after Fyre Fest. The government's exhibits, however, do not show this context. In fact, less than two weeks after Fyre Fest, Ms. Davis wrote to Oren, "Miss you too … When u coming to la[?]" (*Id.* at 45). When Oren says he is "Thinking of doing a vegas trip," Ms. Davis replies, "Oooo that'd be fun". (*Id.* at 48). But without Ms. Davis's testimony, the defendants cannot elicit the full context for the events that occurred at Fyre Fest and Ms. Davis's subsequent relationship with Oren, which are critical to show that nothing was unlawful about his conduct.

Fifth, the government argues that Ms. Davis's communications are admissible as party opponent and adoptive admissions under Federal Rule of Evidence 801(d)(2)(A). However, the government seeks to admit Ms. Davis's messages that she was "seriously not cool with what happened," that Oren "knew [she] didn't want it," and that she "was not comfortable," for the truth of the matter asserted—that the sexual contact was not consensual. (*See* GX B-124-1). Oren expressly denies that assertion by stating it "Didn't seem like that" and it is therefore not an adoptive admission. (*Id.*). Ms. Davis's text message stating that she "woke up with a dick inside [her]" is also hearsay. Though the government claims that this is an adoptive admission, the government offers the exhibit for the truth of the underlying statement—that Oren engaged in sexual intercourse with Ms. Davis while she was asleep without consent. But Oren's reply, that "[it] was [his] fingers first," is a denial. Oren's messages with Jennifer Fields, which refer to Jennifer's undisclosed conversations with Ms. Davis, are similarly inadmissible as double-hearsay that the government offers to prove that Ms. Davis had a problem with what happened.[2] Without Ms. Davis's testimony, subject to cross-examination, the defense cannot show that Ms. Davis did not have a problem with Oren's conduct and that it was not part of the alleged sex trafficking conspiracy.

Even if the Court finds this evidence relevant under Rule 401 and not otherwise inadmissible, its admission should be precluded under Rule 403. The additional probative value is minimal, and the prejudice – particularly with no witness to cross examine – is severe. At this point in the trial, where multiple alleged victims have testified, as well as multiple Rule 413 alleged victims, admitting the proffered evidence would create "undue prejudice" and threaten due process. This Court should exclude the evidence to ensure the defendants' right to a fair trial. *See, e.g.*, *United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017).

---

[2] If the portions of GX B-509-2 cited in GX 1004 are admitted, the defense will seek to include other messages between Ms. Davis and Jennifer from GX B-509-2 that provide necessary context pursuant to Federal Rule of Evidence 106.

The Honorable Valerie E. Caproni
February 10, 2026
Page 4 of 4

   For the reasons stated above and in the defense's February 6, 2026, letter, the Court should exclude this evidence.

                     Respectfully submitted,

                     _____
                     Marc Agnifilo
                     Zach Intrater
                     Teny Geragos

                     *Attorneys for Oren Alexander*

                     Howard Srebnick
                     Jackie Perczek

                     *Attorneys for Alon Alexander*

                     Milton L. Williams
                     Alexander V. Kahn
                     Deanna Paul

                     *Attorneys for Tal Alexander*

cc:  All counsel (via email)